Carol ZABKOWICZ and Stanley Zabkowicz, Plaintiffs,

v.

The WEST BEND COMPANY, et al., Defendants.

No. 83–C–187.

United States District Court, E.D. Wisconsin.

July 23, 1984.

Mulcahy & Wherry by William Sosnay, Mary Moore, Milwaukee, Wis., and Edward T. Hackney, West Bend, Wis., for defendants.

Fox Law Offices, S.C., Madison, Wis., by Michael R. Fox and Terence S. Hawkins, and Sutton & Kelly by Walter F. Kelly, Milwaukee, Wis., for plaintiffs.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

This is an action under the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. and the Wisconsin Fair Employment Act, Wis. Stats. 111.32. The plaintiff alleges that the defendants failed to prevent her co-workers from sexually harassing her at her place of employment. A claim against the union for failure to represent was dismissed by stipulation and a claim against the defendants alleging intentional infliction of emotional distress was dismissed by order of the court.

Defendants Romans, Piotrowski, Rozina and Cyrulik were the co-workers allegedly personally responsible for the acts of harassment against the plaintiff. By the

court's order of May 22, 1984, they were severed for purposes of trial. The plaintiffs' claims against the West Bend Company (West Bend) and Messrs. DeBraal, Schommer and Fredericks, supervisory employees, were tried to the court from June 20 to June 25, 1984.

## FINDINGS OF FACT

Mrs. Zabkowicz was hired by West Bend in 1977 as a general warehouse worker at the company's Oak Creek, Wisconsin, warehouse. Although the number fluctuates, about 20 workers are usually employed at the Oak Creek facility. A warehouse worker's major duty is to prepare skids for loading onto trucks. This requires the use of a forklift or handlift. At the time Mrs. Zabkowicz began to work at Oak Creek, only one other woman, Gayle Dorkey, was employed there. Robert Schommer was the plant manager. The foreman was Wesley Fredericks. After Mr. Schommer moved to a different position in October 1981, Mr. Fredericks became plant manager.

Initially, Mrs. Zabkowicz' relations with her co-workers were good. Her problems began when her husband's brother-in-law, Dennis Murawski, began working at Oak Creek. On more than one occasion, Mr. Murawski asked Mrs. Zabkowicz whether she was wearing a bra. When Mrs. Zabkowicz complained to Mr. Schommer, he told Mr. Murawski to "knock it off" but did not formally discipline him. The recognized forms of discipline under West Bend's policy were an oral warning, a written warning, suspension and discharge.

From 1978 to 1980, Jon Peppey, another co-worker, exposed his buttocks to Mrs. Zabkowicz between 10 and 20 times. Ms. Dorkey, a co-worker, witnessed this conduct on more than three occasions. Mrs. Zabkowicz recalls complaining about Mr. Peppey's conduct to Mr. Schommer and Mr. Fredericks many times. On one occasion, Mr. Schommer called Mr. Peppey into his office and asked him to apologize, but Mr. Peppey refused. No disciplinary action was taken.

From about 1979 until June 1982, other co-workers joined in a campaign of abuse directed at Mrs. Zabkowicz. Defendant Larry Romans is said to have exposed his buttocks to Mrs. Zabkowicz on several occasions. In 1982, when Mrs. Zabkowicz was pregnant and under a 25-pound lifting restriction, Mr. Romans allegedly grabbed his crotch and remarked, "Carol, I bet you'd have trouble handling this 25-pounder." At other times, it is claimed that Mr. Romans grabbed his crotch and growled at Mrs. Zabkowicz.

Mrs. Zabkowicz was frequently subjected to offensive and abusive language. There was testimony that Mr. Piotrowski referred to her in her presence as a "sexy bitch"and "h & h," which meant "hot and horny." The record discloses that defendants Cyrulik, Rozina, Romans and Piotrowski, as well as Mr. Peppey, commonly addressed Mrs. Zabkowicz in such terms of abuse as "slut," "bitch," and "fucking cunt." Co-workers Paul Zierck and Carol Gabriel both testified that they heard these terms directed at Mrs. Zabkowicz.

Mr. Schommer recalled five or six occasions on which Mrs. Zabkowicz complained about abusive language. Mr. Fredericks testified that Mrs. Zabkowicz complained "more than several" times. In a file memorandum dated November 11, 1979, Mr. Schommer summarized a recent meeting with Messrs. Peppey, Rozina, and Fredericks as follows: "We discussed the verbal abusiveness going on in the warehouse, most of which is directed toward another employee." Besides this meeting, Mr. Schommer held occasional general meetings at which company rules against abusive language were recited. No other action was taken to end the abuse directed at Mrs. Zabkowicz. No one was disciplined, even informally, and no investigation was undertaken.

In the period 1979–1982, many sexually oriented drawings were posted on pillars and at other conspicuous places around the warehouse. Mrs. Zabkowicz testified that there were approximately 75 such drawings, many depicting a naked woman with

exaggerated sexual characteristics, often bearing the plaintiff's initials. Mrs. Zabkowicz' co-workers also observed the drawings, which they understood as referring to Mrs. Zabkowicz. Paul Zierck recalled drawings depicting the plaintiff giving birth to a black child and having sexual relations with an animal. He testified that the drawings appeared throughout his employment with West Bend, which began in October 1979. Mr. Zierck considered the drawings "cruel." ·

Gayle Dorkey described numerous drawings posted at the warehouse of naked women bearing insulting messages and subscribed with the plaintiff's initials. She specifically recalled a drawing depicting the plaintiff engaged in oral sex. Kevin Kossow also referred to drawings depicting the plaintiff naked or engaged in a sex act. He characterized the drawings as "downright demeaning."

Mrs. Zabkowicz testified that she brought offensive drawings to Mr. Schommer or Mr. Fredericks about 50 times. Mr. Schommer recalled only three or four occasions on which Mrs. Zabkowicz turned in drawings, while Mr. Fredericks did not deny that he received drawings frequently. In response to Mrs. Zabkowicz' complaints about the drawings, Messrs. Schommer and Fredericks occasionally called warehouse meetings at which employees were reminded of the company's policy against posting. The situation would improve for a short time after such meetings, but then the drawings would reappear.

The plaintiff received permission to take a medical leave of absence beginning on April 26, 1982. On April 23, 1982, Mrs. Zabkowicz observed several of her co-employees celebrating; when told that they were celebrating her imminent departure, Mrs. Zabkowicz broke into tears. Shortly thereafter, she filed a complaint with the Equal Employment Opportunity Commission (EEOC).

An investigatory meeting of West Bend and EEOC officials was held on June 7, 1982. On June 8, 9, and 10, 1982, Jack DeBraal, West Bend's industrial relations officer, conducted an investigation at the Oak Creek Warehouse. On June 14, 1982, Mr. Cyrulik was discharged, Mr. Rozina was suspended for two weeks, and Messrs. Romans and Piotrowski were suspended for two days. In his letters to Mr. Lyons, the union representative, Mr. DeBraal stated specifically that Mr. Cyrulik and Mr. Rozina were guilty of verbal abuse and posting drawings. In addition, Mr. Rozina was charged with indecent exposure. After this disciplinary action, the posting of offensive drawings and other forms of harassment ceased.

Mrs. Zabkowicz returned to work from her medical leave of absence on May 21, 1982, but had to take another leave due to illness beginning on June 17, 1982. Dr. Brian Kennedy testified that he examined Mrs. Zabkowicz in June 1982 and found her anxious and subject to crying spells. Throughout the summer, Mrs. Zabkowicz was seen regularly by her gynecologist, Dr. Calvin Gillespie. Dr. Gillespie testified that Mrs. Zabkowicz was suffering from diarrhea, vomiting, severe nausea, and cramping. He diagnosed her illness as "psychophysiological gastro-intestinal disease due to harassment at work." Mrs. Zabkowicz returned to work on August 17, 1982.

## CONCLUSIONS OF LAW

Title VII of the Civil Rights Act of 1964 makes it unlawful "to discriminate against any individual with respect to ... conditions ... of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). When an employer fails to protect an employee from sexual harassment, thereby forcing the employee to endure an offensive environment or to quit working, the harassment becomes a "condition of employment" prohibited by Title VII. *Henson v. Dundee*, 682 F.2d 897 (11th Cir. 1982); *Bundy v. Jackson*, 641 F.2d 934 (D.C.Cir.1981); See also *Rogers v. EEOC*, 454 F.2d 234 (5th Cir.1971), cert. denied, 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343

(1972). The EEOC guidelines define sexual harassment as follows:

> "Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when ... (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.." 29 C.F.R. § 1604.-11(a).

■ In order to prevail on a Title VII claim based on sexual harassment by co-workers, a plaintiff must show that (1) she is a member of a protected class, (2) she was subjected to unwelcome verbal or physical conduct of a sexual nature, (3) but for her sex, she would not have been subjected to the sexual conduct, (4) the sexual conduct was sufficiently severe or pervasive that it unreasonably interfered with her work performance or created an intimidating, hostile or offensive working environment, and (5) the employer knew or should have known of the harassment but failed to take immediate and appropriate corrective action. *Henson,* supra; 29 C.F.R. § 1604.11.

■ The elements of a sexual harassment claim under Title VII are also the elements of a similar claim under the Wisconsin Fair Employment Act, Wis.Stats. §§ 111.32(13) and 111.36(1)(b). The plaintiff carries the burden of persuasion on both claims. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ Applying the law to the facts of the case, it is clear that the plaintiff is a member of a protected class and that she was subjected to unwelcome conduct of a sexual nature. The defendants deny, however, that Mrs. Zabkowicz was harassed "because of her sex," as required for a Title VII claim; they depict the harassment campaign at the Oak Creek warehouse as the result of a personality clash such as commonly occurs in any workplace regardless of the participants' sex. The defendants contended that if a male employee with the plaintiff's same personality would have suffered equally brutal harassment, even if in a different form, then the harassment was not "because of" the plaintiff's sex, and there is no violation of Title VII.

In my opinion, the defendants' position misinterprets the requirement that a plaintiff show that she was harassed "because of" her sex. There was overwhelming evidence that the plaintiff's colleagues resorted to coarse conduct of a sexual nature in regard to Mrs. Zabkowicz; the sexually offensive conduct and language used would have been almost irrelevant and would have failed entirely in its crude purpose had the plaintiff been a man. I do not hesitate to find that but for her sex, the plaintiff would not have been subjected to the harassment she suffered.

■ Title VII also requires a showing by the plaintiff that the alleged sexual harassment unreasonably interfered with her work performance or created an intimidating, hostile or offensive working environment. The requirement that the harassment be unreasonable assures that Title VII does not serve as a vehicle for vindicating the petty slights suffered by the hypersensitive. The sustained, malicious, and brutal harassment meted out to Mrs. Zabkowicz, however, was more than merely unreasonable; it was malevolent and outrageous. Title VII prohibits precisely such psychologically damaging conditions of employment as were forced upon Mrs. Zabkowicz.

■ The evidence abundantly demonstrates the defendants' knowledge of the harassment of Mrs. Zabkowicz and their failure to take corrective action. Mr. Schommer admitted to receiving five or six complaints about offensive language as well as being handed three or four abusive drawings. There was credible evidence that Mrs. Zabkowicz complained to Mr. Schommer far more often. Mr. Fredericks conceded that Mrs. Zabkowicz had complained and brought drawings to him on many occasions.

Although informed many times of the harassment of Mrs. Zabkowicz, Messrs. Schommer and Fredericks never conducted an investigation or disciplined a single employee until early June, 1982. Management's reaction to the plaintiff's many complaints was to hold occasional meetings at which rules against abusive language and posting were recited. Despite the meetings, the harassment continued for more than three years. It should have been clear to the defendants that the meetings were ineffective in halting the harassment and that other steps were necessary.

That it was within the defendants' capability to halt the harassment campaign is demonstrated by the events which occurred after Mrs. Zabkowicz filed her EEOC complaint. After a three-day investigation, one of the plaintiff's tormenters was discharged, and three others were suspended. Then the nearly four years of harassment ceased immediately. Because the corporate defendant and its officers were aware of the harassment of Mrs. Zabkowicz but failed to adopt effective corrective measures, they are liable for Mrs. Zabkowicz' co-workers' acts. Therefore, the plaintiff has proved her claim of sexual harassment against them.

As equitable relief, Mrs. Zabkowicz asks for back pay for the period from June 17 to August 17, 1982. I believe that credible testimony by Drs. Kennedy and Gillespie substantiates Mrs. Zabkowicz' claim that her absence during that period was caused by the sexual harassment she suffered at work. The plaintiff will be awarded the back pay requested. The court will entertain the plaintiff's motion for an award of attorney's fees pursuant to 42 U.S.C. § 2000e–5(k).

Therefore, IT IS ORDERED that the plaintiff is entitled to judgment that the corporate defendant and its officers violated the plaintiff's rights under 42 U.S.C. § 2000e–2 and Wis.Stats. § 111.32.

IT IS ALSO ORDERED that the plaintiff have judgment for back pay in the sum of $2763.20 for the period from June 17 to August 17, 1982, against the corporate defendant and its officers.

IT IS FURTHER ORDERED that a pretrial conference on the plaintiff's claims against defendants Cyrulik, Rozina, Piotrowski, and Romans is hereby scheduled for Friday, September 7, 1984, at 10:00 a.m.