Lois ROBINSON, Plaintiff,

v.

JACKSONVILLE SHIPYARDS, INC., et al., Defendants.

No. 86–927–Civ–J–12.

United States District Court, M.D. Florida, Jacksonville Division.

Jan. 19, 1988.

---

Sarah E. Burns, Alison Wetherfield, NOWLDEF, New York City, Kathy G. Chinoy Law Offices of Soud & Chinoy, Jacksonville, Fla., for plaintiff Lois Robinson.

William H. Andrews, Eric J. Holshouser, Coffman, Coleman, Andrews & Grogan, Jacksonville, Fla., for defendants, Jacksonville Shipyards, Inc., et al.

### ORDER REGARDING MENTAL EXAMINATION OF PLAINTIFF

MELTON, District Judge.

This cause is before the Court on plaintiff's first Objection to Pretrial Ruling by United States Magistrate, filed herein on August 28, 1987. This objection focuses on point 4 of the Magistrate's order dated August 17, 1987, which granted defendant's Motion to Compel a Mental Examination of Plaintiff Lois Robinson. The Magistrate's ruling required that defendants furnish the information required by Fed.R. Civ.P. 35, except the time of examination, which was deferred pending the present appeal. Defendants replied to plaintiff's objection by memorandum filed herein on September 14, 1987.

The Magistrate's ruling on this matter fell within his powers pursuant to 28 U.S.C. § 636(b)(1)(A), Fed.R.Civ.P. 72(a), and Local R. 6.01(c)(18). Consequently, the Court's review is limited to those portions of the Magistrate's order found to be clearly erroneous or contrary to law. The Court finds that the decision to order plaintiff Lois Robinson to undergo a mental examination is contrary to law, for the reasons stated herein.

### I. BACKGROUND

The present suit concerns sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, in the form of sexual harassment produced by a sexually hostile work environment. Plaintiff alleges that defendants have created a hostile or offensive environment for female employees at Jacksonville Shipyards, Inc. Although the complaint enumerates several distinct aspects of defendants' behavior which comprise the allegedly hostile environment, the instant concern is the allegation that the pervasive presence of pornography in the workplace is offensive to female employees generally and plaintiff in particular.

Plaintiff seeks declaratory and injunctive relief, as well as equitable backpay relief under Title VII for days lost from work alleged to stem from the emotional impact of the hostile work environment sexual harassment. Plaintiff originally included a tort claim related to this emotional distress, but the Second Amended Complaint confines the case to the Title VII claim.

### II. LEGAL FRAMEWORK

Defendant's motion to compel a mental examination requires the interpretation of Fed.R.Civ.P. 35(a), which permits the order-

ing of such examinations subject to certain conditions, and the evolving doctrine governing hostile work environment claims of sexual harassment pursuant to Title VII. Although the question of ordering mental examination of sexual harassment plaintiffs has been addressed in the context of litigation that also involved tort claims for emotional distress, this case presents the first reported instance in which defendants seek to compel the mental examination of a plaintiff who brings a hostile work environment suit solely under Title VII. In this regard, the Court has the benefit of a thoughtful opinion of the California Supreme Court that has been rendered since the Magistrate's decision. *See Vinson v. Superior Court,* 43 Cal.3d 833, 740 P.2d 404, 239 Cal.Rptr. 292 (1987) (discussing differences between combined tort and Title VII suit and "pure" Title VII suit for purposes of Rule 35(a) and its California counterpart).

### A. *Rule 35(a)*

Defendants can obtain an order compelling a mental examination of plaintiff only if the predicates of Rule 35(a) are met. The rule states, in relevant part:

> When the mental ... condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a ... mental examination by a physician.... The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

The key predicates, as the parties recognize, are whether plaintiff placed her mental condition "in controversy" and, if so, whether defendants have shown "good cause" for the examination. According to the sole Supreme Court decision on the subjects, these predicates

> are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is

sought is really and genuinely in controversy and that good cause exists for ordering each particular examination. *Schlagenhauf v. Holder,* 379 U.S. 104, 118, 85 S.Ct. 234, 242, 13 L.Ed.2d 152 (1964); *see also In re Mitchell,* 563 F.2d 143 (5th Cir.1977) (Rule 35 order requires greater showing than general discovery under Rule 26).

Important guidance may be gleaned from *Schlagenhauf* in addition to the standard quoted above. The moving party in that case sought physical and mental examination of another party, the driver in a negligence action arising from an automobile accident. Presumably, these examinations would have revealed the source of the driver's negligence, if any. The Court rejected this justification for ordering the examinations:

> Mental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule. To hold otherwise would mean that such examinations could be ordered routinely in automobile accident cases. The plain language of Rule 35 precludes such an untoward result.

379 U.S. at 121, 85 S.Ct. at 244. The Court's analysis stands as an instruction to avoid an interpretation of the "in controversy" and "good cause" requirements that would permit routine orders for examination simply because the elements of a cause of action could be better proved by evidence of a party's physical or mental condition.

### B. *Sexual Harassment*

■ The essential elements of a sexual harassment claim based on a hostile or offensive work environment are:

(1) The employee belongs to a protected group;

(2) The employee was subject to unwelcome sexual harassment;

(3) The harassment complained of was based upon sex;

(4) The harassment complained of affected a "term, condition, or privilege" of employment; and

(5) Respondeat superior.

*Henson v. City of Dundee,* 682 F.2d 897, 903–05 (11th Cir.1982); *accord Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The most heavily contested aspects of this test are elements two and four. To qualify under element two, the conduct "must be unwelcome in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive." *Henson,* 682 F.2d at 903. For the purpose of element four, sexual harassment "must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment." *Id.* at 904. This is accomplished by harassment that is "sufficiently severe and persistent to affect seriously the psychological well being of employees", an objective evaluation to be determined from the totality of the circumstances. *Id.*

### C. *Application of Rule 35(a) in Sexual Harassment Litigation*

The issue whether sexual harassment charges place a plaintiff's mental condition in controversy has arisen many times, although not usually in the situation in which only a Title VII claim is asserted. Most reported cases involve tort claims for emotional distress damages. Additionally, instances of mental examinations have been reported in cases in which the issue is not expressly addressed.

In *Cody v. Marriott Corp.,* 103 F.R.D. 421 (D.Mass.1984), plaintiff alleged sexual harassment but not psychiatric injuries. Apparently plaintiff did assert a claim of damages for physical and emotional distress. Citing *Schlagenhauf,* the court in *Cody* refused to order the mental examination because it would produce the undesirable result of routinely ordering mental examinations whenever a claim of damages for emotional distress was presented. *Id.* at 422. Notably, the *Cody* court limited its ruling to the particulars of the case before it, expressly disclaiming that an employment discrimination case could never present an instance in which mental condition was in controversy. *Id.* at 423 n. 4.

More recently, the California Supreme Court examined the principles of Rule 35(a) as applied in a sexual harassment suit in order to apply the counterpart California evidentiary rule. *Vinson v. Superior Court,* 43 Cal.3d 833, 740 P.2d 404, 239 Cal.Rptr. 292 (1987). The *Vinson* court would not go as far as the *Cody* court when mental and emotional damages are alleged. The *Vinson* court, however, astutely analyzed the instance in which such damages are *not* claimed:

> A simple sexual harassment claim asking compensation for having to endure an oppressive work environment or for wages lost following an unjust dismissal would not normally create a controversy regarding the plaintiff's mental state. To hold otherwise would mean that every person who brings such a suit implicitly asserts he or she is mentally unstable, obviously an untenable proposition.

*Id.* at 840, 740 P.2d at 409, 239 Cal.Rptr. at 297.

The distinction between tort claims for damages stemming from emotional and mental damage and Title VII claims explains those instances in which courts have ordered mental examinations of sexual harassment plaintiffs. In *Kelly v. Lancaster,* Case No. 83–572–Civ-J–14 (M.D.Fla. Dec. 5, 1984), *dism'd with prejudice by stipulation of the parties* (M.D.Fla. Apr. 10, 1985), plaintiff alleged severe mental, emotional, physical and other injuries and listed a psychiatrist as expert witness in support of the mental and emotional loss claims. This pattern repeats itself throughout the reported cases in this area. *See Arnold v. City of Seminole,* 614 F.Supp. 853, 857, 867 (E.D.Okla.1985) (plaintiff alleged intentional infliction of emotional distress and introduced psychiatric testimony on her inability to return to work); *Zabkowicz v. West Bend Co.,* 585 F.Supp. 635, 636 (E.D.Wis.1984) (ordering plaintiff to undergo psychiatric evaluation), *judgment reported at* 589 F.Supp. 780, 781 (E.D.Wis.1984) (dismissing plaintiff's claim for intentional infliction of emotional distress), *aff'd in relevant part,* 789 F.2d 540 (7th Cir.1986); *Lowe v. Philadelphia News-*

*papers, Inc.*, 101 F.R.D. 296, 298–99 (E.D. Pa.1983) (ordering plaintiff to undergo psychiatric evaluation), *further proceedings reported at* 594 F.Supp. 123, 125 (E.D.Pa. 1984) (detailing controversy over plaintiff's psychiatric problems); *Sand v. George P. Johnson Co.*, 33 Fair Empl.Prac.Cas. (BNA) 716, 717 (E.D.Mich.1982) (plaintiff introduced psychiatric testimony regarding her personality and defendant introduced psychiatric testimony in rebuttal); *Ryzlak v. McNeil Pharm. Co.*, 38 Fed.R.Serv.2d (Callaghan) 443, 444 (E.D.Pa.1982) [available on WESTLAW, 1982 WL 113] (plaintiff's claim of permanent emotional damage put her mental condition in controversy).

The Court concludes from this review of the cases in this area that the California Supreme Court's *Vinson* decision correctly charts the application of Rule 35(a) in sexual harassment cases based on a hostile work environment claim. Unfortunately, that case had not been decided when the Magistrate faced this difficult issue in the present case. In addition, the arguments raised in defense of the Magistrate's order appear to challenge the rule promulgated in *Vinson*. Consequently, the Court will examine the arguments presented by defendants in order to explicate further the decision herein.

## III. DEFENDANTS' CONTENTIONS

Defendants put forward a two-fold analysis for their claim that plaintiff's mental condition is at issue. First, defendants assert that proof of a hostile work environment requires that plaintiff demonstrate that the alleged harassment would satisfy the *Henson* elements as to both the hypothetical reasonable person of the objective standard by which harassment is measured and as to herself individually, that is, "she was no more sensitive to the alleged conduct than the average female shipyard worker." Defendant's Memorandum Opposing Plaintiff's Objection, at 4–5. For this proposition defendants rely heavily upon *Rabidue v. Osceola Refining Corp.*, 805 F.2d 611, 620 (6th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). Defendants argue in effect that plaintiff is hypersensitive to pornography and therefore is atypical among female shipyard workers. Second, defendants claim that plaintiff placed her mental condition in controversy when she sought backpay damages for days she allegedly lost from work because anxiety, depression, and emotional distress caused by the sexual harassment forced her to stay home. Defendants assert good cause for the mental examination based on their inability to gather relevant information on plaintiff's sensitivity to pornography from other sources.

## IV. DISCUSSION AND ANALYSIS

Defendants' interpretation of the *Rabidue* decision directly questions the Court's endorsement of *Vinson*. The Court rejects the defendants' analysis of *Rabidue* for three reasons. Most simply, the case did not face the issue of mental examinations. The rhetorical flourishes to which defendants direct this Court might have been more artfully drafted had this issue lurked within the opinion.

More importantly, defendants misinterpret the standard established in *Rabidue*. The key proposition regarding plaintiff's need to prove that she is not hypersensitive is derived from a misreading of the case. The *Rabidue* court does require that the plaintiff show she was in fact affected by the hostile work environment. In conventional tort parlance, she must show that the hostile work environment proximately caused some injury to her. A Sixth Circuit opinion issued contemporaneously with *Rabidue* and written by Judge Krupansky, the author of *Rabidue*, illustrates the meaning of this requirement. In *Highlander v. K.F.C. National Mgmt. Co.*, 805 F.2d 644 (6th Cir.1986), the plaintiff's expressed comments about the insignificance of one alleged harassment incident, her failure to report another alleged incident for many months, and her husband's characterization of that incident as having been in jest prompted the court to conclude that the plaintiff had failed to prove that she was offended in any significant way or that the incidents adversely affected her work

performance or seriously affected her psychological well being. *Id.* at 649.

The "affected individual" requirement, however, is a minimum, not a maximum. The hostile work environment sexual harassment plaintiff must show that she is at least as affected as the reasonable person under like circumstances. *See, e.g., Moylan v. Maries County,* 792 F.2d 746, 749 (8th Cir.1986); *Christoforou v. Ryder Truck Rental, Inc.,* 668 F.Supp. 294, 301 (S.D.N.Y.1987) (plaintiff admitted that instances of alleged harassing behavior did not interfere with her work ability); *Loftin-Boggs v. City of Meridian,* 633 F.Supp. 1323, 1327 (S.D.Miss.1986) (plaintiff contributed to and apparently enjoyed situation alleged to be harassing behavior), *aff'd,* 824 F.2d 971 (5th Cir.1987). Title VII liability attaches when the case is proved as to the reasonable person, and it does not extend further based on any hypersensitivity of a particular plaintiff. *E.g., Rabidue,* 805 F.2d at 626 (Keith, J., dissenting) (discussing protections afforded by reasonable person and reasonable victim standards); *Lipsett v. Rive–Mora,* 669 F.Supp. 1188, 1199 (D.P.R.1987) (applying *Rabidue–Highlander); Zabkowicz v. West Bend Co.,* 589 F.Supp. 780, 784 (E.D.Wis.1984) ("Title VII does not serve as a vehicle for vindicating the petty slights suffered by the hypersensitive.").

Cases applying the reasoning of *Rabidue* have done so consistent with the foregoing analysis. When a plaintiff admitted that the alleged harassing events did not affect her adversely, the claim has failed. *Lipsett v. Rive–Mora,* 669 F.Supp. 1188, 1203 (D.P.R.1987). Additionally, when the Court determined that the reasonable person would not have been seriously affected by the alleged harassing behavior, then the claim has failed. *Hollis v. Fleetguard, Inc.,* 668 F.Supp. 631, 636–37 (M.D.Tenn. 1987); *Jackson–Colley v. Army Corps of Engineers,* 655 F.Supp. 122, 126–28 (E.D. Mich.1987). When claims have successfully alleged that the harassing behavior constituted a Title VII violation, however, the court evaluated the totality of circumstances and determined that the alleged harass-

ing behavior could be objectively classed as the kind that would seriously affect the psychological well being of a reasonable individual. *Ross v. Double Diamond, Inc.,* 672 F.Supp. 261, 270–72 (N.D.Tex.1987) (delineating four factors by which to measure quality of alleged harassing behavior); *Pease v. Alford Photo Indus., Inc.,* 667 F.Supp. 1188, 1202 (W.D.Tenn.1987). Thus, the *Rabidue* analysis is not the expansion upon *Henson* which defendants assert. *Vermett v. Hough,* 627 F.Supp. 587, 605 (W.D.Mich.1986).

The question of consistency between *Rabidue* and *Henson* urges the third reason to reject defendants' interpretation of *Rabidue.* To the extent that *Rabidue* holds that some forms of abusive, anti-female behavior must be tolerated in the work environment because that behavior is prominent in society at large, *see* 805 F.2d at 626–27 (Keith, J., dissenting), the case conflicts with the established law in this Circuit. *See Walker v. Ford Motor Co.,* 684 F.2d 1355, 1358–59 (11th Cir.1982) (black employees do not have to tolerate racial slurs in workplace as part of social milieu in South); *see also Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1561 n.13 (11th Cir.1987) ("the whole point of the sexual harassment claim" often is the abusiveness in the workplace of behavior which may be acceptable in other social relationships). *Rabidue's* holding on this point has been roundly criticized and rejected. *E.g., Barbetta v. Chemlawn Serv. Corp.,* 669 F.Supp. 569, 573 n.2 (W.D.N.Y. 1987); Note, *Perceptions of Harm: The Consent Defense in Sexual Harassment Cases,* 71 Iowa L.Rev. 1109, 1123 (1986) (criticizing portion of lower court ruling in *Rabidue* which Sixth Circuit quoted with approval). The citation of *Rabidue* in the recent case *Williams–Hill v. Donovan,* 43 Empl.Prac.Dec. (CCH) ¶ 37,305 (M.D.Fla. Feb. 3, 1987) [available on WESTLAW, 1987 WL 11274], does not rehabilitate the decision in the eyes of the Court. The citation is not central to the disposition in *Williams–Hill,* and the Eleventh Circuit's subsequent decision in *Sparks* deserves greater weight.

■ Returning to the elements set forth in *Henson,* the Court perceives that neither element two nor element four are influenced by the argument over plaintiff's alleged hypersensitivity to pornography. As one court applying *Henson* noted:

[T]he focus of the question of sexual harassment should be on the defendant's conduct, not the plaintiff's perception or reaction to the defendant's conduct.... If the defendant's conduct was sufficiently extreme to violate Title VII, then plaintiff's reaction to or interpretation of that conduct is unimportant. If, on the other hand, defendant's conduct did not unreasonably interfere with plaintiff's working environment, her perception of defendant's conduct does not suffice to create a violation of Title VII.

*Jennings v. D.H.L. Airlines,* 101 F.R.D. 549, 551 (N.D.Ill.1984). Framed as an objective standard, it becomes clear that plaintiff has not put her mental condition in controversy, not even by claiming backpay for days lost to the stress of the hostile work environment. A backpay award is not compensatory damages for harm suffered; it is a "make whole" equitable remedy for discriminatory practices. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 415–22, 95 S.Ct. 2362, 2370–73, 45 L.Ed.2d 280 (1975). The Court perceives that plaintiff bears an additional burden beyond proof of a hostile work environment in order to establish eligibility for a backpay award. Plaintiff would have to demonstrate the functional equivalent of an intermittent constructive discharge, that is, she proves that working conditions were so difficult and unpleasant that a reasonable person in her shoes would have felt compelled to resign, or to take time off, in order to cope with the working conditions. *Cf. Henson,* 682 F.2d at 907; *Borque v. Powell Electrical Mfg. Co.,* 617 F.2d 61, 65 (5th Cir.1980). In sum, application of the objective standard for Title VII hostile work environment sexual harassment claims is not informed by evidence which may be obtained in a mental examination. Plaintiff does not place her mental condition in controversy by alleging that her psychological well being, as well as the psychological well being of all reasonable individuals exposed to like circumstances, is seriously affected by defendants' behavior.

The lesson of *Schlagenhauf* must be applied to the law of Title VII hostile work environment sexual harassment claims. Because claims in this area are measured against an objective standard, a ruling in favor of a mental examination in this case would endorse mental examinations in every Title VII hostile work environment sexual harassment case. This result is unacceptable, *Vinson v. Superior Court,* 43 Cal.3d 833, 840, 740 P.2d 404, 409, 239 Cal.Rptr. 292, 297 (1987), and the price would be too high. Plaintiffs in these cases would face sexual denigration in order to secure their statutory right to be free from sexual denigration. C. MacKinnon, *Feminism Unmodified* 114 (1987). Reporting of sexual harassment claims would certainly be discouraged, *id.,* thereby undercutting the remedial effect intended by Congress in enacting Title VII, *Priest v. Rotary,* 98 F.R.D. 755, 761 (N.D. Cal.1983). Faced with a result apparently contrary to the statute, the Court will not impose this cost unless precedent unquestionably dictates the result. The Court's examination of the case law in this area reveals that the emerging pattern opposes the motion to compel a mental examination. Accordingly, it is

ORDERED AND ADJUDGED:

1. That plaintiff's first Objection to Pretrial Ruling by United States Magistrate is hereby sustained; and

2. That point 4 of the Magistrate's Order dated August 17, 1987, which granted defendant's Motion to Compel a Mental Examination of Plaintiff Lois Robinson, is hereby reversed.