**Susan WINSTEAD & Deborah Langford, Plaintiffs,**

**v.**

**LAFAYETTE COUNTY BOARD OF COUNTY COMMISSIONERS, Defendant.**

**CASE NO. 1:16-CV-54-MW/GRJ**

United States District Court, N.D. Florida, Gainesville Division.

Signed July 20, 2016

Marie A. Mattox, Marie A. Mattox PA, Tallahassee, FL, for Plaintiffs.

Margaret Philips Zabijaka, John Sikes Gibbs, III, Constangy Brooks & Smith LLC, Jacksonville, FL, for Defendant.

## ORDER DENYING MOTIONS TO COMPEL PSYCHOLOGICAL EXAMINATIONS

Mark E. Walker, United States District Judge

In this employment discrimination case, the defendant—the Lafayette County Board of County Commissioners ("County")—has moved to compel plaintiffs Susan Winstead and Deborah Langford to submit to psychological examinations pursuant to Rule 35 of the Federal Rules of Civil Procedure. ECF Nos. 22 & 23. Plaintiffs oppose these motions, arguing that Winstead's mental state is not even "in controversy" and that the County has failed to establish good cause for compelling either Winstead or Langford to submit to a psychological examination. ECF

No. 28. Plaintiffs argue in the alternative that certain conditions should be placed on the examinations in the event this Court sides with the County. The County, in turn, argues that these conditions are unnecessary and improper. ECF No. 31. For the reasons set forth below, the County's motions are **DENIED.**

**Rule 35 & Title VII**

Rule 35 provides that a court "may order a party whose mental or physical condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). The party seeking to compel such an examination must show that there is "good cause" why its request should be granted. Fed. R. Civ. P. 35(a)(2)(A). These two requirements—that the opposing party's mental condition be "in controversy" and that there be "good cause" for an examination—must be taken seriously; "[m]ental ... examinations are only to be ordered upon a discriminating application by the district judge of" these requirements. *Schlagenhauf v. Holder*, 379 U.S. 104, 121–22, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). This is because a more relaxed standard would allow parties to routinely compel each other to submit to examinations, which would be contrary to both the spirit of the Rules of Civil Procedure, *see* Fed. R. Civ. P. 1, and the purposes underlying the substantive law at the center of many disputes. *See Schlagenhauf*, 379 U.S. at 121–22, 85 S.Ct. 234 (requiring a "discriminating application" of Rule 35's requirements lest "examinations ... be ordered routinely in automobile accident cases"); *see also Robinson v. Jacksonville Shipyards, Inc.*, 118 F.R.D. 525, 531 (M.D.Fla.1988) (denying a Rule 35 motion seeking to compel a plaintiff in a Title VII hostile work environment case to submit to a mental examination because "a ruling in favor of a mental examination in this case would endorse mental examinations in every Title VII hostile work environment sexual harassment case").

This need to respect the somewhat stringent requirements of Rule 35 is particularly acute in cases brought under a statute like Title VII. Like most anti-discrimination statutes, Title VII includes an anti-retaliation provision that serves to ensure "unfettered access to statutory remedial mechanisms." *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). A lax application of the Rule 35 requirements in cases involving Title VII claims could easily dissuade employees from bringing suit in the first place, and could also dissuade them from even from pursuing administrative remedies. If the price of even having the opportunity to vindicate one's rights under Title VII in court necessarily included a six-hour-long forced psychological examination, many plaintiffs with viable cases might decline to pursue their claims. *See Jacksonville Shipyards*, 118 F.R.D. at 531 (noting that allowing "mental examinations in every Title VII hostile work environment sexual harassment case" would dissuade employees from "[r]eporting ... sexual harassment claims, ... thereby undercutting the remedial effect intended by Congress in enacting Title VII").

**"In Controversy"**

With this in mind, many courts have been reluctant to grant Rule 35 motions for mental/psychological examinations in Title VII cases absent special circumstances. The collective view of these courts—the synthesized "Restatement" version of their holdings—is as follows:

> [A] court will order plaintiffs to undergo mental examinations when, in addition to a claim of emotional distress, one or more of the following elements are present: '(1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental condition is "in controversy" within the meaning of Rule 35(a).'

*Bowen v. Parking Auth. of City of Camden*, 214 F.R.D. 188, 193 (D.N.J.2003) (quoting *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D.Cal.1995)). Also important is any "allegation of present, ongoing, or permanent mental injury or disorder." *See id.* at 195. The courts that have hewn to this view have found that, absent one or more of these

conditions, the plaintiff's mental state is not even "in controversy" within the meaning of Rule 35. *See id.*

Of course, the above elements should not be seen as exhaustive, nor should the presence of any one (or more) of them *automatically* lead to a finding that a plaintiff has put her mental state into controversy. The ultimate question is whether a plaintiff is making a claim for damages related to emotional distress that differs substantially from the typical claim in similar cases—that is, the question is whether the plaintiff's claim is a "garden-variety" one. *See Turner*, 161 F.R.D. at 97.

With respect to Winstead, it's clear that the only elements listed above that are even possibly present are (1) the allegation of an ongoing injury, (2) the allegation of a specific mental or psychiatric disorder, and (3) a claim of unusually severe emotional distress.[1] In the complaint, Winstead and Langford allege that "[t]he actions of Defendant have caused damage to Plaintiffs including, but not limited to, medical and other expenses, ... loss of enjoyment of life, pain and suffering, mental anguish, and related non-economic damages." ECF No. 13 ¶ 19. They further allege that they "have suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.... These damages have occurred in the past, are permanent and continuing." *Id.* ¶¶ 29, 48. In response to interrogatories, Winstead stated that she has been and still is undergoing treatment for "depression, anxiety and lack of sleep," and that her "emotional distress, insomnia and anxiety ... are permanent and continuing" and "will continue to require treatment." ECF No. 22, at 32–33. She further states that she considers these injuries to be severe. *Id.* at 33. The County argues that these statements put Winstead's mental state at issue because anxiety, depression, and insomnia are specific disorders and because Winstead claims that her injuries are ongoing and severe. ECF No. 22, at 8–9.

Many courts faced with similar claims for damages have found that "anxiety" in this context is a "specific psychiatric injury or disorder" so as to place a plaintiff's mental state in controversy. *See, e.g., Dornell v. City of San Mateo*, No. CV 12–06065–CRB, 2013 WL 5443036, at *4 (N.D.Cal. Sept. 30, 2013). But assigning such weight to a single word is a mistake—taken *in context*, the word in this case does not mean "a severe anxiety disorder," but rather the type of anguish that normally accompanies workplace discrimination, or perhaps something only slightly more serious than that. *See Zinaman v. Kingston Reg'l Senior Living Corp.*, No. 1:11–CV–388, 2014 WL 282633, at *2 (N.D.N.Y. Jan. 23, 2014) ("garden variety emotional distress refers to anxiety, humiliation, shame, embarrassment, mental suffering, and distress that may flow naturally from an event that is an affront to one's dignity").

The same can be said of the words "depression" and "insomnia." No doubt these are real health problems, but they're also (1) the type of psychological injuries one would expect to occur as the result of workplace discrimination and (2) somewhat vague terms that have both clinical and non-clinical meanings.[2] And the fact the Winstead considers these injuries to be severe does not make them so. Simply put, the injuries alleged by Winstead are still inside the garden, though they may be edging towards the gate. *Cf. Robinson v. HD Supply, Inc.*, No. 2:12–cv–604, 2013 WL 3815987, at *5 (E.D.Cal. July 19, 2013) (emotional distress *not* "garden-variety" where plaintiff alleged that he suffered from "anxiety, sleeplessness, nightmares, nervousness, depression, worry, loss of appetite, loss of libido, rapid weight gain, hair loss, headaches, nervous twitching, stress, anger, feelings of hopelessness, feelings of isolation, embarrassment, mental anguish, indignation, apprehension, and feelings of betrayal").

1. This Court assumes for purposes of this analysis that Winstead's treater(s) will not be called upon to offer expert testimony.

2. And of course the County can determine (and maybe has already determined) precisely what Winstead means by "depression" and "insomnia" through other methods of discovery.

**"Good Cause"**

Langford all but concedes that she has put her mental state in controversy by alleging that she is suffering from PTSD due to the County's actions. ECF No. 28, at 12. Even assuming she has, however, a mental examination can only be ordered upon a showing of "good cause" by the County. The County argues that (1) once the "in controversy" condition has been met, the "good cause" requirement is more or less automatically met; and (2) it is unfair to allow Langford's treating counselors to opine about her mental injuries without giving the County a chance to investigate those injuries using its own expert. ECF No. 23, at 10–12.

The first argument fails. Although some courts seem to have collapsed the two Rule 35 requirements, they are distinct and implicate different concerns. *See Gavin v. Hilton Worldwide, Inc.*, 291 F.R.D. 161, 165, 165 n. 3 (N.D.Cal.2013); *HD Supply*, 2013 WL 3815987, at *5–6 (treating "in controversy" and "good cause" requirements separately). This Court will not collapse the "in controversy" and "good cause" inquiries.

The second argument has more merit, but it also fails. "One factor that is relevant to the determination of 'good cause' is the possibility of obtaining the desired information by other means." *Marroni v. Matey*, 82 F.R.D. 371, 372 (E.D.Pa.1979) (citing *Schlagenhauf*, 379 U.S. at 118, 85 S.Ct. 234). When the "desired information" is in essence a treating physician/therapist/psychologist's records and opinions about a party's mental injuries, disclosure of those records and opinions—together with the opportunity to depose the party and perhaps the treater—offers a less intrusive means of obtaining similar (if not the same) information. *Cf. Gavin*, 291 F.R.D. at 165 (finding good cause in part because the plaintiff sought damages for ongoing emotional distress but hadn't been treated for years, so that the defendant could not "depose any of [the plaintiff's] treaters in order to ascertain her continuing emotional distress"); *Storms v. Lowe's Home Centers, Inc.*, 211 F.R.D. 296, 298 (W.D.Va.2002) (finding that even if Rule 35 applied to vocational assessments, no good cause existed in part because "Plaintiff has provided Lowe's with a copy of all medical records, a copy of the report from his vocational expert, his tax records, and all other discoverable material requested by Lowe's").[3]

Here, the record shows that the County has at least some, if not all, of the records from Langford's treaters. ECF No. 23, at 50; ECF No. 28, at 13. And Langford's treatment is ongoing. ECF No. 23, at 34. Under these circumstances, this Court finds that the County has not established good cause to compel Langford to undergo a psychological examination. It appears that the County can, through other discovery tools, gather adequate information to call into question Langford's claims of ongoing emotional injury.[4]

**Discretion of the Court**

"Even if good cause is shown [under Rule 35(a)(2)(A)], it is still within the

3. Things are different when a plaintiff seeks to prove her emotional injuries through retained expert, rather than treating physician, testimony. Although there appears to be near-universal agreement about this principle, *see, e.g., Duncan v. Upjohn Co.*, 155 F.R.D. 23, 25 (D.Conn.1994), courts don't often discuss the reasons behind the difference in treatment. And the difference in treatment seems to make little sense given how juries respond to retained experts versus treating physicians. *See* Mark Curriden, *Formidable Friends*, 88-FEB ABA J. 41, 44–45 (2002) ("[J]uries tend to discount the testimony of equally qualified competing expert witnesses. However, ... jury research shows the jury will follow the counsel and opinion of the treating physician about 99 percent of the time.").

But one policy-based reason for the difference in treatment seems obvious: a plaintiff should not be effectively punished for seeking treatment, particularly when that treatment was initially sought (as it was here) prior to the onset of litigation. In contrast, a plaintiff who submits to an evaluation by an expert chosen by her lawyer is not seeking treatment—she's trying to advance her litigation position. Forcing such a plaintiff to submit to a similar examination conducted by a different expert (one likely chosen by the opposing party) is not a punishment, but a leveling of the playing field.

4. For similar reasons, this Court finds that the County has not established good cause to compel Winstead to submit to a psychological examination. It appears that Winstead has turned over medical records related to her treatment, ECF No. 22, at 32, and of course the County will depose Winstead and may depose her treating ARNP.

court's discretion to determine whether to order an examination." *Curtis v. Express, Inc.*, 868 F.Supp. 467, 468 (N.D.N.Y.1994). In this case, this Court would not order psychological examinations under Rule 35 (at least based on the evidence in front of it) *even if* the County had shown good cause for such examinations.

There are two reasons for this. First, there are the policy concerns discussed earlier that are somewhat unique to the employment context. There is a distinct danger of Rule 35 being used as a sort of retaliatory measure,[5] and that danger counsels in favor of granting Rule 35 motions sparingly given the policies underlying Title VII and similar statutes.

Second, there is the fact that the tests the County wishes Plaintiffs to undergo are "objective" only in a narrow sense, and not totally analogous to most *physical* examinations. "Psychological tests, even so-called objective psychological tests such as the MMPI, are not objective in the same sense that biomedical tests are objective. The MMPI is scored entirely on the patient's self report. If a person claims to be depressed and answers as 'true' MMPI questions asking whether he or she is unhappy or cries all the time, the MMPI will report that the person is depressed." Ansar M. Haroun & Grant H. Morris, *Weaving a Tangled Web: The Deceptions of Psychiatrists*, 10 J. Contemp. Legal Issues 227, 238 (1999). Unlike, say, a physical injury stemming from a car crash, a plaintiff's claim of some emotional harm is not easily confirmed or disconfirmed by subjecting that plaintiff to an examination. This is not to say that psychological examinations such as the MMPI have *no* probative value in a case such as this one, but their relatively limited probative value counsels in favor of denying Rule 35 motions for psychological exams. If a party thinks the opposing party is exaggerating the extent of her mental injuries, rigorous questioning at a deposition and scrutiny of medical records seems at least as good a way of confirming that suspicion as a quasi-objective psychological exam.

This is not to say that a psychological exam under Rule 35 would *never* be warranted in an employment case. If a plaintiff were to deny the opposing party access to records of treaters, citing some privilege; or if a plaintiff were to claim some long list of psychological symptoms, many of them non-generic ("loss of appetite, loss of libido, rapid weight gain, hair loss, headaches, nervous twitching . . ."); or if a plaintiff were to claim that she could not work at all; or if a plaintiff were to offer her own retained expert's assessment of her mental injuries based on some exam—under such circumstances, there would likely be "good cause" for ordering a psychological exam, *and* ordering such an exam would serve the interests of justice even considering the policy goals behind anti-discrimination statutes. This case, however, does not appear to involve any such circumstances.

### Conclusion

Plaintiffs will not be compelled to undergo psychological exams under Rule 35. Winstead has not put her mental state in controversy, nor has the County shown good cause for forcing her to undergo a psychological exam. Langford has more or less admitted that she has put her mental state in controversy, but the County has not shown good cause for compelling her to undergo a psychological exam. Finally, even if the County had shown good cause, this Court would decline to order psychological exams in this case given the nature of the case and the nature of the exams. Accordingly, the County's motions, ECF Nos. 22 & 23, are **DENIED**.

With that said, this Court wishes to make clear that its rulings in this Order are premised on the assumptions that (1) Plaintiffs will *not* offer up any retained expert testimony as to their mental/emotional injuries; (2) if Plaintiffs intend to have any of their treaters

5. One can even imagine a case—this is not such a case, of course—in which a Rule 35 motion is so clearly groundless that it amounts to an actionable retaliatory action under Title VII. *Cf. E.E.O.C. v. Outback Steakhouse of Fla., Inc.*, 75 F.Supp.2d 756, 758 (N.D.Ohio 1999) (counterclaim filed by defendant employer in Title VII case could itself be actionable as retaliatory action).

testify about diagnoses or other opinions formed during the course of treatment, they have fully complied with (or will immediately fully comply with) Rule 26(a)(2)(C); and (3) Plaintiffs have provided the County with sufficient information (medical records, etc.) to allow for a full inquiry into both the veracity and nature of their claims for emotional damages.

**SO ORDERED on July 20, 2016.**