J. Lynn **MITCHELL**, Tiffany **Musser** and Wendy **Weston**, Plaintiffs,

v.

Carl Joseph **HUTCHINGS**, an individual, the City of St. George, Utah, a municipal corporation, and Gary **Esplin**, an individual, Defendants.

Civ. No. C–86–834W.

United States District Court, D. Utah, C.D.

May 15, 1987.

L. Zane Gill, Salt Lake City, Utah, Alan D. Boyack, St. George, Utah, for plaintiffs.

Allan L. Larson, Jerry D. Fenn, Salt Lake City, Utah, for defendants City of St. George and Gary Esplin.

T.W. Shumway, St. George, Utah, for defendant City of St. George.

Craig M. Snyder, Provo, Utah, for defendant Gary Esplin.

Carman Kipp, Salt Lake City, Utah, Michael J. Hughes, St. George, Utah, for defendant Carl Hutchings.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on plaintiffs J. Lynn Mitchell's, Tiffany Musser's and Wendy Weston's motion to quash deposition subpoenas. In the alternative plaintiffs request that the court issue a protective order limiting the scope of examination in those depositions. The motion was opposed by defendants Carl Joseph Hutchings and the City of St. George. This matter was argued orally on May 12, 1987. L. Zane Gill represented the plaintiffs. Allan L. Larson represented the defendant City of St. George and Carman E. Kipp represented defendant Hutchings. Following oral argument the court took this matter under advisement. After considering the arguments of counsel, the memoranda and the relevant authority the court now renders the following decision and order.

## I.

### Background

Plaintiffs filed a complaint alleging a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, claiming that defendant Hutchings sexually harassed plaintiffs. Plaintiffs also pled a pendant claim for intentional infliction of emotional distress.

Defendants have noticed up the depositions of several people that defendants allege are privy to information relevant to these proceedings. Three of the deponents are alleged to have had personal relationships with the plaintiffs.[1] Another deponent, David Heaton, is a photographer who has allegedly taken sexually suggestive pictures of one or more of the plaintiffs. Defendants contend that some of these pictures were displayed at the St. George police station. Defendants also wish to depose Mark Barklacich, a St. George police officer, who is alleged to have been held down by other police officers while one of the plaintiffs fondled him. The final deponent, Sheldon Prestwich, is a psychologist who has been treating one of the plaintiffs for emotional disturbances allegedly caused by defendant Hutchings' actions.

Defendants argue that the information sought from these witnesses is material and relevant to these proceedings for several reasons. First, defendants argue that plaintiffs' cause of action for intentional infliction of emotional distress requires an inquiry into the degree of emotional distress suffered by plaintiffs. Defendants argue that sexually promiscuous plaintiffs would not be as distressed by unwanted sexual advances as would plaintiffs who are less sexually active. Second, defendants argue that this same inquiry is relevant to plaintiffs' damages. Defendants note that plaintiffs have retained their jobs, meaning at most only non-economic psychological damages can be recovered. Thus, defendants reason, the degree of emotional distress suffered by plaintiffs is also relevant to their damages. Third, defendants note that evidence of the sexual atmosphere at plaintiffs' workplace has a bearing on Hutchings' possible defense that he considered his conduct to be welcomed by the plaintiffs. Fourth, defendants argue evidence of sexual activity is admissible under Fed.R.Evid. 406 as evidence of "habit."

Plaintiffs contend that defendants' inquiries are calculated to annoy, embarrass and oppress the plaintiffs by inquiring into private sexual matters of no relevance to these proceedings. Plaintiffs also contend that the information sought constitutes inadmissible character evidence under Rule 404(a) of the Federal Rules of Evidence.

## II.

### Analysis

The instant motion has been brought before any questions have been put to the specific witnesses. As such, the court is in a position of only fashioning broad guidelines for discovery in this case. Despite this limitation, the court is of the opinion that much of the information sought by the defendants is wholly irrelevant to the issues in this litigation and beyond the scope of discovery.

Under the Federal Rules of Civil Procedure, discovery in civil cases is generally broad. The rules authorize discovery of all information that is relevant or "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civil.P. 26(b)(1). Broad discovery has been coupled, however, with an array of protective orders designed to prevent discovery from being used as a tool of oppression rather than as a legitimate inquiry into relevant issues. Fed.R.Civ.P. 26(c).

█ In the instant case, the focus of inquiry is on the relevance of the deponents' testimony. If the evidence sought is not relevant, and thus inadmissible, and it does not appear that the evidence sought will lead to evidence that is admissible,

---

**1.** Kerry Walker was Mitchell's boyfriend; Glen Banks is the father of Musser's child; Jody █ Johnson is Weston's roommate and alleged paramour.

then the court can properly limit discovery. Since sexual activity is very private and personal, this legal question assumes an important role in sexual harassment cases. *See* L. Krieger & C. Fox, *Evidentiary Issues in Sexual Harassment Litigation*, 1 Berkeley Women's L.J. 115 (1985). Because the evidence sought may have a bearing on the Title VII claim, on the emotional distress claim, on character evidence and on damages, the court will review what it considers to be the bounds of relevant testimony in each of these areas.

## A. *Sexual Harassment Claim*

In *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), after holding that the gravamen of a sexual harassment claim is whether the sexual advances were "unwelcome", as opposed to "voluntary", the United States Supreme Court briefly addresses the issue of appropriate evidence in these cases. The Supreme Court reversed the appellate court's determination that the plaintiff's "dress and personal fantasies ... had no place in the litigation." The court noted that a complainant's sexually provocative speech or dress is relevant in determining whether the sexual advances were welcome. *Id.* 106 S.Ct. at 2407. The Supreme Court cites with approval EEOC guidelines which emphasize that sexual harassment claims must be evaluated from "the record as a whole" and the "totality of circumstances such as the nature of the sexual advances and the context in which the alleged incidents occurred." *Id.* (quoting 29 C.F.R. § 1604.11(b) (1985).

■ In the instant case, evidence relating to the work environment where the alleged sexual harassment took place is obviously relevant, if such conduct was known to defendant Hutchings. This evidence can establish the context of the relationship between plaintiffs and Hutchings and may have a bearing on what conduct Hutchings thought was welcome. At the same time, evidence of sexual conduct which is remote in time or place to plaintiffs' working environment is irrelevant.

Hutchings cannot possibly use evidence of sexual activity of which he was unaware or which is unrelated to the alleged incidents of sexual harassment as evidence to support his defense. Such evidence is also unlikely to lead to the discovery of admissible evidence. Given the annoying and embarrassing nature of this discovery, the court holds, as a matter of law, that Rule 26 of the Federal Rules of Civil Procedure preponderates against its discoverability.

## B. *Emotional Distress Claim*

Defendants allege that some of the information sought is ·relevant to the claim of emotional distress. In *Samms v. Eccles*, 11 Utah 2d 289, 358 P.2d 344 (1961), the Utah Supreme Court defines the tort of intentional infliction of emotional distress. The tort requires defendants to:

> intentionally engage in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or (b) any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the *generally accepted standards of decency and morality.* (emphasis added) 358 P.2d at 346–47.

■ The standard established in *Eccles* is in part an objective one. The outrageousness and intolerability of the offending conduct is measured by an objective standard. Hence, the sexual proclivities and behavior of the plaintiffs are irrelevant to a jury's finding the defendants' conduct to be outrageous. An objective review of the Hutchings' conduct would, however, require the jury to view it in the context of the working environment. Since the standard is objective, all evidence of sexual behavior in the workplace environment, whether known to the defendants or not, is relevant. All other evidence of sexual behavior is irrelevant and not discoverable under Rule 26.

## C. *Damages*

■ Defendants also argue that plaintiffs' sexual conduct has a bearing on dam-

ages. Defendants note that plaintiffs' alleged damages are limited to psychological and emotional damages. Defendants argue that those damages require an inquiry into the sexual behavior of the plaintiffs because sexually promiscuous people are less likely to be offended by sexual harassment, and thus less damaged, than those who are less sexually active. Although defendants' argument has a persuasive ring, this court does not agree. Past sexual conduct does not, as defendants would argue, create emotional calluses that lessen the impact of unwelcomed sexual harassment. The fact that the plaintiffs may welcome sexual advances from certain individuals has absolutely no bearing on the emotional trauma they may feel from sexual harassment that is unwelcome. Past sexual conduct does not callous one to subsequent, unwelcomed sexual advancements. This court cannot condone a wholesale inquiry into the past sexual conduct of the plaintiffs under such a theory.

### D. *Psychologist's Testimony*

■ Defendants also wish to depose Prestwich, a psychologist, who has treated one of the plaintiffs for emotional trauma allegedly suffered because of the sexual harassment. Prestwich's expert opinion relating to the extent of plaintiff's emotional trauma and its causes is obviously relevant to the damages issue. If Prestwich is deposed, the defendants must be allowed to inquire into all information upon which he has based his opinion. If his opinion is based on evidence which might otherwise be irrelevant, it must still be admitted because it is part of his reasoning process. Defendants may also inquire in a hypothetical form or otherwise how certain information, if known to Prestwich, would affect his opinion.

---

**2.** Rule 406 states: "Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eye witnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."

### E. *Evidence of Habit or Character*

Defendants also contend that the evidence sought from the proposed deponents is admissible as "habit" evidence under Rule 406 of the Federal Rules of Evidence.[2] Plaintiffs argue that the evidence constitutes character evidence which is inadmissible under Rule 404(a).[3]

■ This issue was addressed by the District Court for the Northern District of California in *Priest v. Rotary*, 98 F.R.D. 755 (N.D.Cal.1983). This court concurs with the court's holding in *Priest*. Evidence regarding a plaintiff's sexual history is inadmissible character evidence. The discovery of such evidence cannot possibly lead to admissible evidence and would only serve to embarrass and annoy the plaintiffs.

### III.

### *Summary*

In Summary, the court holds, as a matter of law, that the inquiry in this case must be limited to information which is pertinent to the plaintiffs' working environment. Questions relating to sexual activity remote in time or place to the working environment is wholly irrelevant and unlikely to lead to admissible evidence. Such questions would only serve as tools of annoyance and harassment and serve no purpose in this litigation.

As previously noted by the court, the nature of this motion makes it difficult to establish a concrete order defining the scope of discovery. With that in mind, the court will attempt to fashion a protective order relating to the witnesses mentioned in plaintiffs' motion.

The court is of the opinion that the deposition subpoenas of Glen Banks, Kerry Walker and Jodi Johnson should be quashed until such time as the defendants

---

**3.** Rule 404(a) states: "Evidence of a persons' character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion. ..."

can show that these witnesses have information which is relevant to these proceedings.

The deposition of David Heaton can be taken, but the only photographs which are pertinent to this litigation are those which are publically displayed in the police station or privately displayed to the defendants. The testimony of Mark Barlacich is also relevant, as these events apparently took place in the context of the working environment. The deposition of Sheldon Prestwich may also be taken subject to the limitations outlined above.

Accordingly,

IT IS HEREBY ORDERED that the plaintiffs' motion to quash deposition subpoenas is granted in part and denied in part. Plaintiffs' motion for a protective order is granted, as outlined above.