Susan Q. **BRIDGES**, Virginia D'Aponte, and Kimberly Muryasz, Plaintiffs,

v.

**EASTMAN KODAK COMPANY**, Yourdon, Inc., Thomas A. Walker, John Kucik, Michael French, Kevin Cash, Mary Heaphy, and David Offenhartz as Supervisors, Agents and Employees of Eastman Kodak Company and Yourdon, Inc. (a Kodak Company), Defendants.

No. 91 Civ. 7985 (RLC).

United States District Court, S.D. New York.

Feb. 3, 1994.

Solotoff & Solotoff, Great Neck, NY (Lawrence Solotoff, of counsel), for plaintiffs.

Jaspan, Ginsberg, Schlesinger, Silverman & Hoffman, Garden City, NY (Stanley A. Camhi, of counsel), for defendant Cash.

Nixon, Hargrave, Devans & Doyle, Garden City, NY (Thomas G. Dignan, of counsel), for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

The background of this sexual harassment case is set forth in an opinion issued on September 1, 1992, *Bridges v. Eastman Kodak Co.*, 800 F.Supp. 1172 (S.D.N.Y.1992) (Carter, J.), with which familiarity is assumed. This action is presently before the court for consideration of various issues, as follows: (1) the impact of the non-retroactivity of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a), ("1991 Act") to the issues in this case; (2) defendants' request under Rule 35(a), F.R.Civ.P., for an order compelling mental examinations of plaintiffs; and (3) plaintiffs' request for a protective order, presumably under Rule 26(c), F.R.Civ.P., limiting the scope of inquiry of plaintiffs and their therapists.

### I.

In its opinion of September 1, 1992, the court denied defendants' motion to dismiss plaintiffs' pendent state claims under New York Human Rights Law, N.Y. Exec. Law § 296(1)(a) (McKinney 1982) ("HRL"). That decision was based in part on the court's finding that plaintiffs were entitled to a jury trial and compensatory damages on their claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (as amended by the Civil Rights Act of 1991) due to the retroactivity of the 1991 Act. *Bridges*, 800 F.Supp. at 1179. However, following that decision, the Second Circuit concluded that the 1991 Act was not retroactive, *see Butts v. City of New York Dep't of Housing Preservation and Development*, 990 F.2d 1397 (2d Cir.1993), thereby putting the basis of the court's earlier decision in doubt. In an order dated September 1, 1993, the court directed the parties to rebrief the retroactivity issue as it applies in this case in light of *Butts*. Subsequently, defendants requested an order: dismissing plaintiffs' claims for compensatory and punitive damages under Title VII; striking plaintiffs' demand for a jury trial; dismissing all other actions under the 1991 Act; and dismissing plaintiffs' pendent state claims. Plaintiffs, however, contend that *Butts* is not controlling in this case, arguing that the *Butts* court's ruling should be narrowly construed since that decision focused primarily on the retroactivity of "substantive rights."

While *Butts* focused on the retroactivity of the 1991 Act as to the substantive rights of that plaintiff,[1] the *Butts* court nevertheless declined to follow the presumption

---

1. The *Butts* court held that the § 1981 amendments of the Civil Rights Act of 1991 do not apply retroactively and therefore affirmed the district court's dismissal of plaintiff's § 1981 claims for discrimination in the terms and conditions of her employment. *Butts*, 990 F.2d at 1412.

of retroactivity. *Butts,* 990 F.2d at 1411. Moreover, in a later case the Second Circuit explicitly reversed a district court's ruling allowing the retroactive application of the 1991 Act's provisions concerning the plaintiff's claims for compensatory and punitive damages and demand for a jury trial. *Wisdom v. Intrepid Sea–Air Space Museum,* 993 F.2d 5, 7 (2d Cir.1993). The court is obliged to adhere to the *Butts* decision "as the law of this Circuit," *Wisdom,* 993 F.2d at 7, and so the 1991 Act must be applied prospectively only. Under the law existing at the time of the allegations made in the instant case, plaintiffs had no right to either a jury trial, *see, e.g., Wade v. Orange County Sheriff's Office,* 844 F.2d 951, 953 (2d Cir.1988), or compensatory or punitive damages under Title VII, *see, e.g., Carrero v. New York City Housing Authority,* 890 F.2d 569, 581 (2d Cir.1989). Therefore, the court must dismiss plaintiffs' claims for compensatory and punitive damages and strike their demand for a jury trial as to their Title VII claims.

■ While it is clear that the non-retroactivity of the 1991 Act denies plaintiffs the right to a jury trial and compensatory and punitive damages on their federal claims, it may still be appropriate for the court to hear plaintiffs' state law claims and allow a jury trial on these claims Defendants, however, argue that pendent jurisdiction is inappropriate, contending that jury confusion and the predominance of state issues would be likely given the differences in the legal standards and relief available under Title VII and New York state law.[2] They also argue that pendent jurisdiction would subvert Congress' intent not to allow jury trials for Title VII claims.

■ A federal court may hear state law claims under the doctrine of pendent jurisdiction if the state claims "are so related to [the federal] claims in the action ... that they form part of the same case or controversy ..." 28 U.S.C. § 1367(a) (1992); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The decision to exercise jurisdiction is discretionary, and a federal court may dismiss the state claims if they substantially predominate over the federal claims or if there is a likelihood of jury confusion. *See* 28 U.S.C. § 1367(c); *Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1139.

There is no doubt that the Title VII and the HRL claims arise from the "same case or controversy" since the state claims are based on the same allegations of discriminatory conduct as the federal claims. Thus, the court clearly has the power to entertain plaintiffs' state HRL claims.

As to the issue of predominance of state issues and jury confusion, some district courts in this circuit have declined to exercise pendent jurisdiction over state HRL claims, while others have found such jurisdiction appropriate. *Compare, e.g., Burger v. Health Ins. Plan,* 684 F.Supp. 46, 50–51 (S.D.N.Y. 1988) (Conboy, J.) (potential for jury confusion one reason for dismissing claim); *Barbetta v. Chemlawn Services Corp.,* 669 F.Supp. 569, 571 (W.D.N.Y.1987) (HRL claim dismissed because jury confusion likely); and *Alveari v. American International Group, Inc.* 590 F.Supp. 228, 232 (S.D.N.Y.1984) (Weinfeld, J.) (retention of state claim would complicate what would otherwise be a simple non-jury case) *with Drummer v. DCI Contracting Corp.,* 772 F.Supp. 821, 831–833 (S.D.N.Y.1991) (Sweet, J.) (pendent jurisdiction exercised over state law sex discrimination claim despite differing legal standards and relief available under the applicable state and federal laws); *Song v. Ives Laboratories, Inc., Div. of American Home Products Corp.,* 735 F.Supp. 550, 555 (S.D.N.Y.1990) (Wood, J.) (pendent jurisdiction exercised over state HRL claims); *Giuntoli v. Garvin Guybutler Corp.,* 726 F.Supp. 494, 503 (S.D.N.Y.1989) (Ward, J.) (pendent jurisdiction exercised over HRL claim where court had jurisdiction over Title VII sex discrimination claim).

In the cases cited in which pendent jurisdiction was not exercised, however, there were additional factors which militated

---

2. Specifically, there are differing standards for proving liability under Title VII and HRL, and plaintiffs are entitled to seek compensatory damages under state law, N.Y. Exec. Law § 297(4)(c)(iii), but not under Title VII.

against exercising jurisdiction which are not present in the instant case. In *Burger*, an age discrimination case, the court determined that the issue of jury confusion over the difference of damages alone "probably would not persuade the court to decline jurisdiction." *Burger*, 684 F.Supp. at 50. However, because the plaintiff sought relief to which she was not entitled, and application of state law on an unprecedented basis, the court declined to exercise pendent jurisdiction. *Id.* at 50–51. In *Barbetta*, an additional factor weighing against exercising pendent jurisdiction was that the plaintiff had asserted a claim for intentional infliction of emotional distress. *Barbetta*, 669 F.Supp. at 571. Lastly in *Alveari*, the court declined to hear the state claims because it wanted to avoid the "procedural thicket" surrounding state law on the election of remedies. *Alveari*, 590 F.Supp. at 232. The absence of these additional factors in the instant case, however, casts doubt on the precedential weight to be given to the above cited cases.

Moreover, "considerations of judicial economy, convenience and fairness to the litigants," *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139, militate in favor of retaining jurisdiction. Since federal courts have exclusive jurisdiction over Title VII claims, dismissing the HRL claims would leave plaintiffs with no choice but to proceed in two forums. This outcome would be unnecessarily duplicative and wasteful of judicial resources. *See Song*, 735 F.Supp. at 554. Therefore, defendants' request to dismiss plaintiffs' pendent HRL claims is denied.

To the extent that defendants' arguments for striking plaintiffs' jury demand are premised on the dismissal of their state claims, that argument is moot since the court has decided to exercise pendent jurisdiction. Thus, although plaintiffs' do not have a right to a jury trial on their federal claims, they are entitled to a jury trial on their HRL claims. *See O'Brien v. King World Productions, Inc.*, 669 F.Supp. 639, 642 (S.D.N.Y. 1987) (Goettel, J.) (plaintiff has right to jury trial on HRL claim even though no such right exists under Title VII); *Selbst v. Touche Ross & Co.*, 587 F.Supp. 1015, 1017 (S.D.N.Y.1984) (Knapp, J.) (although Title VII plaintiff not entitled to jury trial under federal law, plaintiff entitled to jury trial under pendent New York Executive Law claim).

## II.

At a July 28, 1993 conference, the court requested that the parties brief two issues: (1) whether mental anguish is a component of plaintiffs' Title VII and New York state law sexual harassment claims or whether plaintiffs are asserting a separate intentional infliction of emotional distress claim; and (2) what is the permissible scope of examination of plaintiffs and their therapists regarding the alleged mental anguish. In their ensuing memoranda of law, defendants requested a Rule 35(a), F.R.Civ.P., order requiring plaintiffs to submit to mental examinations, as well as permission under Rule 26(b), F.R.Civ. P., to question plaintiffs and their therapists about plaintiffs' psychological histories. Plaintiffs, objecting to such extensive inquiries, requested a protective order under Rule 26(c), F.R.Civ.P., limiting the scope of discovery.

■ Title VII of the Civil Rights Act of 1964 prohibits discrimination with respect to the "compensation, terms, conditions, or privileges of employment" on the basis of an individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A claim for sexual harassment under Title VII is not limited to economic or tangible discrimination, but may be actionable if a plaintiff can prove that the harassment was sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–67, 106 S.Ct. 2399, 2404–06, 91 L.Ed.2d 49 (1986) (quoting *Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir.1982)).

Plaintiffs contend that mental anguish is a component of both their federal and state sexual harassment claims and that they are not making a separate claim based on the tort of intentional infliction of emotional distress. Specifically, they allege that as a result of their abusive working conditions, they suffered injuries to their psychological well-

being including emotional pain, suffering and mental anguish. (Compl. ¶ 42.)

 Mental anguish may be relevant to a Title VII sexual harassment claim to the extent that it shows that the harassment complained of "altered the conditions" of a plaintiff's employment, including her psychological well-being. *Harris v. Forklift Systems, Inc.*, —— U.S. ——, ——, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). However, while psychological harm may be taken into account as one of several factors relevant in determining whether an environment is hostile or abusive, proof of such injury is not needed to prevail in a sexual harassment claim. *Id.*

 Similarly, mental anguish may also be relevant to a plaintiff's sexual harassment claims under New York Executive Law § 296(*l*) since a plaintiff may be entitled to compensatory damages for mental suffering under that statute. *See Batavia Lodge No. 196, etc. v. New York State Div. of Human Rights*, 35 N.Y.2d 143, 146, 359 N.Y.S.2d 25, 28, 316 N.E.2d 318 (1974); *Thoreson v. Penthouse Int'l, Ltd.*, 149 Misc.2d 150, 156, 563 N.Y.S.2d 968, 972 (Sup.Ct.1990); *Board of Education v. McCall*, 108 A.D.2d 855, 855, 485 N.Y.S.2d 357, 358 (A.D.2d Dep't 1985). Therefore, the extent of a plaintiff's mental anguish is pertinent in determining the amount of damages to be awarded under New York law.

 Since mental anguish is relevant to both their state and federal claims, plaintiffs are not making a separate claim for intentional infliction of emotional distress. The next question, then, is the permissible scope of examination of plaintiffs and their therapists regarding the alleged mental anguish.

Defendants contend they are entitled to conduct their own mental examinations of plaintiffs under Rule 35(a), F.R.Civ.P., because plaintiffs have placed their mental condition in controversy with their allegations of emotional suffering and mental anguish. Plaintiffs, on the other hand, argue that mental examinations are not warranted under the Rule.

 Defendants may obtain an order compelling mental examinations of plaintiffs only if they can satisfy the requirements of Rule 35(a), F.R.Civ.P., which states in relevant part:

> When the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician ... The order may be made only on a motion for good cause shown ...

The key predicates for the application of this rule are whether the plaintiffs have put their mental condition "in controversy" and whether defendants have shown "good cause" for the examination. *See Schlagenhauf v. Holder*, 379 U.S. 104, 118, 85 S.Ct. 234, 243, 13 L.Ed.2d 152 (1964). These requirements are not met by "mere relevance to the case ... but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf*, 379 U.S. at 118, 85 S.Ct. at 243.

Courts have determined that in some employment and sexual discrimination cases plaintiffs do not affirmatively put their mental conditions in controversy by alleging psychological injury. *See, e.g., Robinson v. Jacksonville Shipyards, Inc.*, 118 F.R.D. 525, 531 (M.D.Fla.1988) (plaintiff did not place her mental condition in controversy even though she claimed back pay for days lost due to stress and alleged serious effect on psychological well-being); *Cody v. Marriott Corp.*, 103 F.R.D. 421, 422 (D.Mass.1984) (plaintiff did not place her mental condition in controversy by claiming damages for emotional distress). However, other courts have come to the opposite conclusion. *See, e.g., Zabkowicz v. West Bend Co.*, 585 F.Supp. 635, 636 (E.D.Wis.1984) (allegations of emotional distress from sexual harassment appropriate basis for allowing order to compel psychiatric examination); *Everly v. United Parcel Services, Inc.*, No. 89–C 1712, 1991 WL 18429 *1, 1991 U.S. Dist. LEXIS 1255 *2 (N.D.Ill. Feb. 4, 1991) (plaintiff placed mental condition in controversy by specifically alleg-

ing in her sexual discrimination complaint a claim for intentional infliction of emotional distress).

Even in non-sexual discrimination cases, there is considerable dissention among the courts as to whether a plaintiff puts his or her mental condition in controversy by alleging emotional distress. *Compare Lowe v. Philadelphia Newspapers Inc.*, 101 F.R.D. 296, 298–99 (E.D.Pa.1983) (defense entitled to psychiatric examination of plaintiff in racial discrimination case who placed her mental state into question by seeking compensatory and punitive damages for severe physical and emotional distress); *Brandenberg v. El Al Israel Airlines*, 79 F.R.D. 543, 546 (S.D.N.Y.1978) (Haight, J.) (psychiatric examination of plaintiff appropriate under Rule 35(a) in tort action where plaintiff seeking recovery of damages for mental and psychiatric injuries) *with, Sabree v. United Brotherhood of Carpenters & Joiners, Local No. 33*, 126 F.R.D. 422, 426 (D.Mass.1989) (plaintiff in racial discrimination suit did not place mental condition in issue by "garden-variety claim of emotional distress" and mental examination not warranted); *Hodges v. Keane*, 145 F.R.D. 332, 334 (S.D.N.Y.1993) (Sotomayor, J.) (in § 1983 case in which plaintiff does not assert ongoing pain and suffering, allowing Rule 35(a) order would open the floodgates to requests for mental examinations whenever a plaintiff alleged past pain and suffering).

While there seems to be no hard and fast rule that can explain these different results, most cases where mental examinations have been allowed have either involved a separate tort claim for emotional distress, *Everly*, 1991 WL 18429 at *1, 1991 U.S. Dist. LEXIS 1255 at *2, *Brandenberg*, 79 F.R.D. at 546, or an allegation of ongoing severe mental injury, *Lowe*, 101 F.R.D. at 298–99. Neither situation is present in the instant case.

Plaintiffs claim that their abusive working conditions caused them mental suffering and assert that they are not alleging a separate tort claim for emotional distress. Therefore, as the court accepts plaintiffs' denial of the existence of a separate tort claim, that basis for granting the Rule 35(a) order does not exist.

Moreover, though plaintiffs admit to having undergone psychological counseling, they do not claim that their mental injury is ongoing, nor that they ever suffered from a psychiatric disorder.[3] In fact, had plaintiffs asserted the existence of an ongoing mental illness, there might have been a sufficient basis to allow defendants' request on the grounds that plaintiffs' mental condition was in controversy. *See, e.g., Hodges*, 145 F.R.D. at 334; *Vinson v. Superior Court*, 43 Cal.3d 833, 840, 239 Cal.Rptr. 292, 740 P.2d 404 (1987). However, because plaintiffs allege past, not present pain and suffering, that basis for granting a Rule 35(a) order too does not exist.

Therefore, because there is no adequate basis to support a Rule 35(a), F.R.Civ.P., order requiring mental examinations of plaintiffs, and because the decision to compel a such an order rests within the court's discretion, *see Coca–Cola Bottling Co. v. Negron Torres*, 255 F.2d 149, 153 (1st Cir.1958) (a district court may deny a Rule 35(a) motion where there is no allegation of ongoing mental injury), defendants' request is denied.

### III.

Defendants also contend that they are entitled to ask plaintiffs and their therapists about plaintiffs' psychological histories under Rule 26(b), F.R.Civ.P., and to obtain their medical records since such information is necessary and relevant to defendants' ability to defend themselves against plaintiffs' allegations. Plaintiffs, however, request that the court issue a protective order, presumably pursuant to Rule 26(c), F.R.Civ.P., to limit the scope and extent of defendants' inquiries to matters concerning plaintiffs' psychological well-being directly related to their employment. They argue that the far-reaching inquiries into their personal histories requested by defendants is an invasion of privacy and would discourage them and

---

3. The court in *Cody* noted that mental examinations might have been warranted in that case if plaintiffs had alleged a "psychiatric disorder" requiring psychiatric or psychological counseling. *Cody*, 103 F.R.D. at 423.

other plaintiffs from filing actions for sexual discrimination.

Rule 26(b), F.R.Civ.P., allows parties to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ..." Courts have construed this language to permit discovery "where there is any possibility that the information sought may be relevant" to the litigation. *Mallinckrodt Chemical Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348, 353 (S.D.N.Y.1973) (Edelstein, J.), quoting C. Wright, Law of Federal Court § 81 at 359 n. 47 (2d Ed.1970). However in some circumstances, the Rule permits a court to restrict discovery of relevant material upon a showing of good cause by the party seeking relief in order to protect "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Rule 26(c), F.R.Civ.P. In such cases, the burden of persuasion is on the party seeking the protective order, and broad allegations of harm unsubstantiated by specific examples do not satisfy the Rule 26(c) test. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir.1986), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987).

Although having to answer questions about their personal histories is to some extent an intrusion in their privacy, and may in fact inhibit some plaintiffs from proceeding with their claims, such an inquiry is warranted since plaintiffs are seeking compensation for their mental anguish.[4] *Lowe*, 101 F.R.D. at 298. *See also Davis v. Ross*, 107 F.R.D. 326, 329 (S.D.N.Y.1985) (Carter, J.) Moreover, since plaintiffs seek to prove that they have suffered emotional distress as a result of the sexual harassment through their testimony and the testimony of their therapists, defense counsel has a right to inquire into plaintiffs' pasts for the purpose of showing that their emotional distress was caused at least in part by events and circumstances that were not job related. *Lowe*, 101 F.R.D. at 298. Indeed, as far as the testimony of their therapists is concerned, defendants must be allowed to inquire into all relevant information upon which the therapists' opinions is based, not necessarily only information directly related to their employment. *Mitchell v. Hutchings*, 116 F.R.D. 481, 485 (D. Utah 1987).

Nevertheless, although the defendants will be permitted to inquire into plaintiffs' personal histories, it must be emphasized that defendants may not engage in a fishing expedition by inquiring into matters totally irrelevant to the issue of emotional distress.[5] In other words, the scope of the inquiry must be limited to whether, and to what extent, the alleged harassment caused plaintiffs to suffer emotional harm.

## IV.

Defendants' request to strike plaintiffs' demand for a jury trial and dismiss their claims for compensatory and punitive damages as to their Title VII claims is granted. Defendants' request to dismiss plaintiffs' pendent state claims is denied. Defendants' request under Rule 35(a), F.R.Civ.P., for mental examinations of plaintiffs is also denied. However, defendants will be permitted to question plaintiffs and their therapists about plaintiffs' psychological histories and conduct related discovery as long as the inquiry is relevant to plaintiffs' alleged mental anguish.

**IT IS SO ORDERED.**

---

4. Although plaintiffs will not be able to recover compensatory damages on their Title VII claims, they clearly seek such damages on their New York state claims.

5. For example, it would be inappropriate for defendants to question plaintiffs about their past sexual histories in order to show that sexually promiscuous people are less likely to be offended, and thus less damaged, than those who are not as sexually active. *See Mitchell v. Hutchings*, 116 F.R.D. at 485; *See also, Priest v. Rotary*, 98 F.R.D. 755, 761–62 (N.D.Cal.1983); *Vinson v. Superior Court*, 43 Cal.3d at 841, 239 Cal.Rptr. 292, 740 P.2d 404.