**Joseph BOWEN, et al., Plaintiffs,**

v.

**The PARKING AUTHORITY OF THE CITY OF CAMDEN, et al., Defendants.**

Civ. No. 00–5765(JBS).

United States District Court, D. New Jersey, Camden Vicinage.

April 4, 2003.

Thomas McKay, III, Peter Lucca, Cozen O'Conner, Cherry Hill, NJ, for Plaintiff Joseph Bowen.

John A. Zohlman, III, Laura D. Ruccolo, Kenney & Kearney LLP, Cherry Hill, NJ, for The Parking Authority of the City of Camden, Carlos M. Morcate, Carmen Otero, Linda R. Jones, Thomas Buckingham, Charles Kellogg, Israel Hilerio, and Judy E. Fulton.

William L. Bowe, Hannah Schwarzschild, Willig Williams & Davidson, Haddonfield, NJ, for Plaintiff Thomas Del Rosario.

John J. Lack, West Collingswood, NJ, for William R. Jenkins and Peter McHugh.

## OPINION

ROSEN, United States Magistrate Judge.

## I. INTRODUCTION

Presently before the court is the motion of Laura D. Ruccolo, Esquire, counsel for Defendants The Parking Authority of the City of Camden, Carlos M. Morcate, Carmen Otero, Linda R. Jones, Thomas Buckingham, Charles Kellogg, Israel Hilerio, and Judy E. Fulton (collectively herein referred to as "the City defendants"), to compel the psychiatric examination of Plaintiff Joseph Bowen, pursuant to Fed.R.Civ.P. 35. After careful consideration of the parties' submissions, and after further consideration of the oral argument conducted on the record on February 21, 2003, the City defendants' motion to compel a psychiatric examination of Plaintiff Joseph Bowen shall be *denied*.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As the background of this case was reviewed in some detail in the order dated October 24, 2001, the court shall focus only on those facts and the procedural background most pertinent to this motion.

Plaintiff Joseph Bowen began working at the Parking Authority in May 1997 as a Property Manager. Beginning in the spring of 1998 and continuing throughout his employment with the Parking Authority, Bowen alleges that he noticed conduct at the Parking Authority that violated various laws, rules, and regulations as well as conduct that could be considered discriminatory. (*See, e.g.,* Amended Complaint ¶¶ 22–45, 107). Bowen further alleges that after bringing this conduct to the attention of his supervisors, certain individuals at the Parking Authority harassed and threatened him. (*See, e.g.,* Amended Complaint ¶¶ 44–56, 77). Bowen complained to then Executive Director Scarduzio, Defendant Morcate, and others about the allegedly harassing conduct.

(*See, e.g., id.* at ¶¶ 57–59). Bowen asserts that, following these complaints, he was retaliated against. (*See, e.g., id.* at ¶¶ 60–65, 130–131).

Bowen contends that the harassment by certain Parking Authority officials caused him "stress and emotional problems" for which he sought treatment. (*See id.* at ¶ 126). On June 29, 2000, Bowen left work and did not return "at the explicit direction of [his] treating physician[ ]." (*Id.* at ¶ 127). The Parking Authority terminated Bowen's employment, based on Bowen's failure to report to work. (*See* Defendants' Moving Brief at 2). On August 11, 2000, the Parking Authority held a termination hearing. Bowen asserts that he was precluded from presenting evidence of retaliation at that termination hearing. The Authority, however, did allow Bowen to present evidence by his treating physician that he "was unable to return to his position at the Parking Authority at that time [June 2000] due to his medical condition." (*Id.* at ¶ 136). Bowen specifically alleges in connection with his complaint that "[a]bsence due to illness was not grounds for terminating his employment contract." (*Id.* at ¶ 137). Plaintiffs Joseph Bowen and Thomas Del Rosario[1] filed a complaint in the Superior Court of New Jersey asserting violations of the New Jersey Conscientious Employee Protection Act, N.J. Stat. Ann. § 34:19–1, *et seq.* (CEPA) and the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5–1, *et seq.* (NJLAD). On November 22, 2000, the defendants removed the action to this court.

Plaintiff Joseph Bowen has consistently represented to this court that he intends to produce his treating physician, Dr. Prabhaker Patel, as a fact witness at trial to testify as to Bowen's mental condition in the summer of 2000. Most recently, Bowen's counsel has stated that "Mr. Bowen [ ] intends to offer Dr. Prabhaker Patel as a fact witness at trial to offer testimony about [Bowen's] past work-related stress in order to explain why he did not return to work after June 2000." (Letter of Thomas McKay, III, Esquire, dat-

---

1. Del Rosario has not joined in the instant application, and has indeed consented to and undergone a psychological evaluation.

ed 3/11/03, at 1–2). Counsel further explained: "Mr. Bowen's allegations of mental stress are generalized claims for damages stemming from past harm he suffered as a result of the Parking Authority's improper conduct." (*Id.* at 2). This statement conflicts with the plaintiff's amended complaint which avers that Bowen "continues to suffer severe emotional distress." Specifically, Count I (CEPA), Count III (NJLAD), and Count V (§ 1983) each contain the following statement:

As a direct natural and proximate result of the actions described above by each and every defendant, the Plaintiff has suffered and continues to suffer severe emotional distress, mental anguish, pain, suffering and humiliation and has been unable to attend to the normal activities of his daily life including but not limited to an inability to attend his duties in the workplace.

(*See* Count I ¶ 191, Count III ¶ 205, Count V ¶ 220). At oral argument before this court, Bowen's counsel represented that Bowen was not pursuing claims for present or ongoing mental or emotional distress.[2]

This language in the amended complaint as well as the planned testimony of Dr. Patel were the impetus for the defendants' request for a psychiatric examination of Bowen. With respect to the complaint, the defendants direct the court to Bowen's assertion that he was disparately treated. Bowen alleges that when Director Scarduzio suffered work-related stress allegedly because of workplace harassment by certain commissioners, he was granted a leave of absence. Bowen asserted that his absence was also grounded in workplace harassment by these same commissioners, but that he was not extended the same accommodation. (*See* Amended Complaint, ¶¶ 48, 49; and Defs.' Moving Brief at 2). Rather, he contends, the Authority retaliated against him by instituting termination proceedings.

With respect to Dr. Patel's testimony, the defendants proffer certain testimony that Dr. Patel presented to the Authority at Bowen's August 2000 termination hearing, as well as documents they have obtained during discovery. The documents consist of prescriptions for medication and certain treatment notes.[3] (*See* Certification of Laura D. Ruccolo, Esquire, filed 1/6/03 ("Ruccolo Cert."), Ex. A). Included in this body of medical prescriptions and notes is a letter which Bowen presented at his termination hearing from Dr. Patel to Bowen's then-counsel which states:

Joseph Bowen was seen in my office on 7/10/00 for a followup visit. At that time he reported an increase in stress at his job with the Parking Authority of the City of Camden. This increase in stress had caused an exacerbation of Mr. Bowen's symptoms of depression: i.e. decreased concentration, insomnia, and helplessness.

Due to his symptom exacerbation, Mr. Bowen's medication regimen was adjusted and I recommended that he not go to work at his job with the Parking Authority beginning 7/10/2000 for an unspecified amount of time. He was not restricted medically from visiting his ice cream shop.

(Letter of P.S. Patel, M.D., dated 8/9/00, attached as Ex. C to Ruccolo Cert.; *see also* Defs.' Moving Brief at 2). Based on this evidence, the defendants contend that Dr. Patel acted not only as the plaintiff's treating physician, but also as an expert for the plaintiff "because he prepared various written diagnoses regarding plaintiff's mental infirmity for plaintiff's use at his termination hearing and opined that in his professional opinion plaintiff was so severely mentally disabled that he was unable to return to work." (Defs.' Reply Brief at 3). On review, the court could find no statement by Dr. Patel that "in his professional opinion plaintiff was so severely mentally disabled that he was

---

**2.** At oral argument, the court directed the plaintiff to provide the court with a statement of all information being stipulated out of the complaint no later than February 28, 2003, which stipulation the court received and has subsequently filed. The stipulation deletes reference to ongoing emotional or mental distress, and Bowen shall be precluded from testifying as to his pres-

ent mental status at trial in accordance with the below order.

**3.** Although the City defendants consistently refer to these documents as "reports" of Dr. Patel, upon review, the court can find nothing resembling a report within the context of the federal rules. *See* Fed.R.Civ.P. 26(a)(2)(B).

unable to return to work." The closest document to a professional opinion or to a statement that Bowen was mentally disabled was the letter of August 9, 2000, quoted in full above. The defendants contend that in denying the defendants a psychiatric examination, Bowen is attempting to "morph [Dr.] Patel's opinions regarding Bowen's inability to work into a medically incontestable fact[.]" (Defs.' Reply at 3).

In opposition, Bowen asserts that the defendants are not entitled to a psychiatric examination because he "has not alleged a separate emotional distress claim, a specific mental or psychiatric injury or disorder or a claim of unusually severe emotional distress." (Pl.'s Opp. at 6). Bowen further states that he has "certainly never conceded that his mental condition is 'in controversy' within the meaning of Rule 35(a)." (*Id.* n. 2).

The psychiatric examination of Bowen was first scheduled for July 9, 2002. At first, Bowen consented to an examination.[4] It was not until December 2002 that Bowen first objected to any psychiatric examination, although the deposition date was postponed for several reasons not relevant to this application until December 4, 2002. Some time in November 2002 Bowen's counsel objected to the examination. The court was consulted for assistance and on December 3, 2002, the court entered an order requiring both Bowen and Plaintiff Thomas Del Rosario to appear for two psychiatric examinations, one by Dr. Scasta and one by Dr. William Campagna. *See* Order of the Honorable Joel B. Rosen.

Dr. Campagna's examination would consist of the Minnesota Multiphasic Personality Inventory ("MMPI"), a personality assessment test. The defendants have represented that this examination is required by Dr. Scasta for his examination. (*See* Defs.' Moving Brief at 5). Indeed, Dr. Scasta provided this court with an affidavit explaining that he plans to conduct a "comprehensive psychological examination" which examination will include review of the MMPI, which he describes as "an objective study designed to elucidate information regarding a person's personality." (Affidavit of Dr. David Scasta, undated with no original signature, ¶¶ 2–3,

filed on April 2, 2003). Dr. Scasta concluded that "[f]ollowing [his] comprehensive examination and the MMPI, it is [his] belief that [he] shall have the necessary foundation to offer an opinion within a reasonable degree of psychiatric certainty concerning Bowen's mental status in or about June 2000 and if relevant, prior to and beyond that date." (*Id.* at ¶ 4). On December 4, 2002, counsel for Bowen objected again to the examination. This court stayed its December 2nd order pending a formal motion.

This motion followed.

## III. DISCUSSION

■ Rule 35(a) empowers the court to order a mental examination of a party when the party's mental condition is "in controversy," and the party seeking the examination has demonstrated "good cause." The rule provides in relevant part:

When the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner.... The order may be made only on motion for good cause shown[.]

Fed.R.Civ.P. 35(a).

The United States Supreme Court considered both the validity and the construction of Rule 35 in a decision which has shaped the current debate, *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). The Court in *Schlagenhauf* held that Rule 35 "requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause,' which requirements ... are necessarily related." 379 U.S. at 118–19, 85 S.Ct. 234. The Court found that the "in controversy" and "good cause" requirements "are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case-but require an affirmative showing by the movant that each condition as to which the examination is

---

4. Plaintiff Del Rosario consented to and has undergone a psychiatric examination.

sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf,* 379 U.S. at 118, 85 S.Ct. 234.

In *Schlagenhauf,* the Court considered a negligence claim brought by bus passengers who sustained injuries when the bus collided with a tractor-trailer. Schlagenhauf, the bus driver, was among the defendants, along with the bus company, tractor and trailer owners, and driver of the tractor-trailer. The bus company cross-claimed against the tractor-trailer defendants, asserting that it was negligence by the tractor-trailer driver that caused the accident. The tractor-trailer defendants defended this cross-claim by asserting that Mr. Schlagenhauf's own actions caused the accident. *See Schlagenhauf,* 379 U.S. at 106–107, 85 S.Ct. 234. The tractor-trailer defendants then sought Rule 35 examinations of Mr. Schlagenhauf in the specialties of internal medicine, ophthalmology, neurology, and psychiatry. *Id.* at 107, 85 S.Ct. 234. The Court vacated the district court's order compelling the Schlagenhauf to submit to examinations in these specialties. The Court rejected the evidence supporting the request for Rule 35 examinations as insufficient, namely "the general conclusory statement in [the defendant's] answer to the cross-claim that 'Schlagenhauf was not mentally or physically capable of operating' the bus at the time of the accident and the limited allegation in National Lead's cross-claim that, at the time of the accident, 'the eyes and vision of . . . Schlagenhauf was (sic) impaired and deficient.'" *Id.* at 120, 85 S.Ct. 234. The record, the Court found, fell woefully short of that required to order the "wide-ranging psychiatric or neurological examinations" or the "broad internal medicine examination" requested. *Id.* The Court's stated concern, and a result which the Court

sought to avoid, was the routine ordering of examinations in automobile accident cases, as, the Court found, "[t]he plain language of Rule 35 precludes such an untoward result." 379 U.S. at 122, 85 S.Ct. 234.

The legal landscape has broadened since 1964. The motor vehicle negligence glut of past years, *see Schlagenhauf,* 379 U.S. at 122 n. 18, 85 S.Ct. 234, has been replaced largely by employee discrimination actions.[5] And the lower courts have struggled to develop a sufficient test by which to review requests for examinations under Rule 35 with consistency. Hanging in the balance, of course, are on the one side the plaintiff's constitutional right to privacy of mind and body and on the other the defendant's interest in obtaining all relevant information for defense of the case.

### A. The "In Controversy" Requirement

There are two primary ways in which the mental or physical condition of a plaintiff can be placed "in controversy" in the context of Rule 35. The plaintiff can place his or her mental or physical condition in controversy through representations made during the course of the litigation. Although what is contained in the pleadings may be sufficient, it is not necessarily so. *See Schlagenhauf,* 379 U.S. at 119, 85 S.Ct. 234. Another party may also place the plaintiff's mental or physical condition in controversy by way of defense to the underlying action. "In cases where the defendant seeks to make the plaintiff's mental state an issue, the defendant bears the burden of showing that the plaintiff's mental state is in controversy." *Womack v. Stevens Transport, Inc.,* 205 F.R.D. 445, 447 (E.D.Pa.2001). The City defendants claim that Bowen's mental condition has been placed in controversy in both of these ways.

---

**5.** For some context, "between 1970 and 1989, the overall caseload in the federal courts grew by 125%. During the same period, by contrast, the employment discrimination caseload of the federal courts grew by 2,166%. In 1989, plaintiffs filed 8,993 employment discrimination complaints in the federal courts; in 1997, after years of steady increase, that number had grown to 24,174 cases. In the twelve-month period ending on September 30, 1998, a total of 256,787 new civil cases had been filed in the federal courts, nearly 10% of which involved employ-

ment discrimination claims. Similarly, during this interval, employment discrimination matters constituted over 20% of all the civil cases involving questions of federal law that were decided after oral argument before the federal courts of appeals." Michael Kittner, Thomas C. Kohler, *Conditioning Expectations: the Protection of the Employment Bond in German and American Law,* Comp. Lab. L. & Pol'y J. 263, 277 Winter 2000 Articles (internal footnotes omitted). Indeed, "only prisoner petitions constitute a larger proportion of civil or Federal question filings." *Id.*

The "in controversy" requirement in particular has led to a considerable divergence of opinion among courts. *See Ziemann v. Burlington County Bridge Comm.*, 155 F.R.D. 497, 501 (D.N.J.1994) (noting controversy and citing cases); *Bridges v. Eastman Kodak Co.*, 850 F.Supp. 216, 222 (S.D.N.Y. 1994) (same). However, most courts agree that for a plaintiff's mental status to be "in controversy" requires more than "garden variety" emotional distress allegations that are part and parcel of the plaintiff's underlying claim. *See, e.g., Gattegno v. Pricewaterhousecoopers, LLP*, 204 F.R.D. 228, 232 (D.Conn.2001); *Turner v. Imperial Stores*, 161 F.R.D. 89, 97–98 (S.D.Cal.1995); *Smith v. J.I. Case Corp.*, 163 F.R.D. 229, 231 (E.D.Pa.1995); *Bridges*, 850 F.Supp. at 220, 222; *Sabree v. United Broth. of Carpenters & Joiners*, 126 F.R.D. 422, 426 (D.Mass. 1989); *Robinson v. Jacksonville Shipyards, Inc.*, 118 F.R.D. 525, 531 (M.D.Fla.1988). The *Turner* court in particular conducted an exhaustive and exacting review of the relevant cases. In that wrongful termination action the court summarized the law in the following way: a court will order plaintiffs to undergo mental examinations when, in addition to a claim of emotional distress, one or more of the following elements are present: "(1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental condition is 'in controversy' within the meaning of Rule 35(a)." *Turner*, 161 F.R.D. at 95. After its review, the *Turner* court concluded that

> "emotional distress" is not synonymous with the term "mental injury" as used by the Supreme Court in *Schlagenhauf v. Holder* for purposes of ordering a mental examination of a party under Rule 35(a), and specifically disagree[d] with those few cases holding that a claim for damages for emotional distress, without more, is sufficient to put mental condition "in controversy" within the meaning of the rule. If this were the law, then mental examinations could be ordered whenever a plaintiff

claimed emotional distress or mental anguish.

161 F.R.D. at 97. The court then denied the defendant's application for a mental examination. Significant to the court's decision were the facts that the plaintiff had not "brought an action for either intentional or negligent infliction of emotional distress," had not "alleged that she suffers from a specific psychiatric injury or disorder as a result of defendant's conduct," did not "claim to suffer from unusually severe emotional distress," did not "intend to offer expert testimony regarding her emotional distress," and had not "conceded that her mental condition is 'in controversy.'" *Id.* at 98. The court made these findings despite the plaintiff's one million dollar compensatory damages claim for "humiliation, mental anguish, and emotional distress[.]" *Id.* at 97.

Also instructive is *Bridges v. Eastman Kodak Company*, 850 F.Supp. 216 (S.D.N.Y. 1994). In that employment discrimination claim, the plaintiffs alleged that they suffered emotional distress as a result of the discriminatory actions of the defendant employer. The plaintiffs both retained therapists with whom they treated for the stress. *See Bridges*, 850 F.Supp. at 220. The court concluded that the evidence before it indicated that "though the plaintiffs admit to having undergone psychological counseling, they do not claim that their mental injury is ongoing, nor that they ever suffered from a psychiatric disorder." *Id.* at 222. As a consequence, the court found no adequate basis upon which to order a mental examination under Rule 35(a).

Notably, the *Schlagenhauf* Court informed its decision on the appropriate breadth of the "in controversy" requirement by referring to the scope of discovery under Rule 26(b)'s provision that "'the deponent may be examined regarding any matter, not privileged, which is *relevant to the subject matter involved* in the pending action' (emphasis supplied) and by the provisions of Rule 30(b) permitting the district court, upon motion, to limit, terminate, or otherwise control the use of discovery devices so as to prevent either their use in bad faith or undue 'annoyance, embarrassment, or oppression.'" 379 U.S.

at 117, 85 S.Ct. 234 (emphasis in original). While the federal rules continue to provide a wide berth for disclosure in civil cases, the latest amendments to the federal rules, effective December 1, 2001, limited the scope of discoverable information. Rule 26(b) now provides generally that:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).

Fed.R.Civ.P. 26(b)(1) (as amended Dec. 1, 2000). The 2000 amendment to Rule 26(b) modified a party's access to information, changing the focus from that information "relevant to the *subject matter* involved in the pending action" to that information "relevant to the *claim or defense* of any party." Fed.R.Civ.P. 26(b)(1) (emphasis supplied). Discovery of information "relevant to the subject matter involved in the action," previously allowed as a matter of right under the prior version of Rule 26(b)(1), now can be undertaken only with leave of court or for good cause shown. *See id.* The amended rule applies to pending actions "insofar as just and practicable." Order of the Supreme Court of the United States Adopting and Amending Rules, dated April 30, 1991. The Advisory Committee illuminated the adjustment somewhat, explaining:

> The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in

a given action. For example, . . . information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

2000 Advisory Committee Notes subsection (b)(1). Finally, the Committee commented that "[t]he court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested." *Id.*

Considering the narrowed scope of discovery under the rules generally with the *Schlagenhauf* Court's words cautioning against a rubric allowing examinations under Rule 35(a) in every instance, this court must agree with the *Turner* and *Bridges* courts that Rule 35(a) requires more than a claim for emotional distress as an element of the plaintiff's underlying cause of action.

█ In the instant case, the plaintiff has alleged a claim for emotional distress, but, with the above noted stipulation (*see supra* n. 1), the complaint asserts no more. Thus, this basis for ordering an examination is not present.

No specific psychiatric malady has been alleged nor has Bowen asserted a claim of unusually severe emotional distress within the meaning of Rule 35. And, the plaintiff has specifically represented that he does not intend to offer expert testimony to support his claim of emotional distress. The City defendants appear to contest these conclusions. Specifically, the City defendants assert that the plaintiff's doctor found that the plaintiff was "so severely mentally disabled that he was unable to return to work." (Defs.' Reply Brief at 3). However, the court has no such information before it. Rather, the court has been presented with the representation of plaintiff's counsel that Dr. Patel will testify only as a treating physician, not as an expert.[6] In addition, the court has the

---

**6.** Testimony at trial of treating physicians is reg-   ulated differently than that of experts. *See* Fed.

August 9, 2000, letter from Dr. Patel. In the letter, Dr. Patel merely states that the stress of Bowen's working situation was such that he could not return to work at the Parking Authority. Notably, Dr. Patel indicated that Bowen shows "symptoms of depression" and that these symptoms are exacerbated by his attendance at the Parking Authority, but not at his independent ice cream shop business. Consequently, the court has no information which leads to the conclusion that the plaintiff was "severely mentally disabled" or that he was "unable to work" but only that he suffered from symptoms of depression.

The facts before this court align with those of *Bridges*. Bowen asserted that he suffered emotional stress because of the work environment at the Parking Authority. Bowen treated with Dr. Patel on that subject. Bowen does not assert an ongoing mental injury, nor a psychiatric disorder. Nor does Bowen assert an independent cause of action for intentional or negligent infliction of emotional distress. The court has conducted a careful review of every case cited by the City defendants. The one crucial element different in each of those cases is the existence of an allegation of present, ongoing, or permanent mental injury or disorder. *See Womack v. Stevens Transport, Inc.*, 205 F.R.D. 445, 447 (E.D.Pa.2001) (present inability to work due to psychological injury); *Gattegno*, 204 F.R.D. at 232 (plaintiff alleged that she "has suffered and will continue to suffer damages, including ... mental anguish, physical and emotional distress, humiliation and embarrassment," in addition to asserting an independent claim for negligent infliction of emotional distress); *Ziemann*, 155 F.R.D. at 501 (alleged "60% permanent psychiatric disabili-

ty"); *Duncan v. Upjohn Co.*, 155 F.R.D. 23, 25 (D.Conn.1994) ("[T]he plaintiff became totally disabled and institutionalized.... [T]he plaintiff will experience permanent medical, psychological and/or psychiatric impairment."); *Lowe v. Philadelphia Newspapers, Inc.*, 101 F.R.D. 296, 298–299 (E.D.Pa.1983). No such allegation exists here. Thus, those cases are distinguishable. Consequently, the court finds that Bowen has not placed his mental status "in controversy" under Rule 35(a).[7]

### B. Permissible Discovery

The finding that the defendants are not entitled to a Rule 35 mental examination does not, however, preclude the defendants from obtaining discovery concerning the plaintiff's psychiatric history. To the contrary, the psychological history of the plaintiff is governed by Rule 26(b), not Rule 35(a). The court finds that the plaintiff's psychological history is relevant to the plaintiff's claim that the emotional distress emanated from his employment. The defendants may question the plaintiff on these issues, request psychological records, and depose Dr. Patel, as well as any other therapist, on his treatment of the plaintiff. *See Bridges*, 850 F.Supp. at 223; *Lowe*, 101 F.R.D. at 298. Indeed, as to Dr. Patel's testimony, the defendants "must be allowed to inquire into all relevant information upon which the therapists' opinions [are] based, not necessarily only information directly related to [Bowen's] employment." *Bridges*, 850 F.Supp. at 223. However, the defendants may not engage in a fishing expedition. The "scope of the inquiry must be limited to whether, and to

---

R.Evid. 701 through 705. This court's order does not speak to that issue. That is an issue more appropriately addressed to the trial judge at or near the time of trial. However, the plaintiffs shall be barred from utilizing Dr. Patel as an expert at trial, and indeed shall be barred from utilizing any expert on the issue of his mental status. The court makes this order based on the plaintiff's repeated representations that he does not intend to call an expert at trial on the issue of his mental status, and that Dr. Patel will be utilized as a treating physician only. Had the plaintiff planned to present an expert at trial, the court's decision may well have come down in favor of the examination.

7. Because the court finds that the plaintiff has not placed his mental condition "in controversy," the court need not address the issue of whether "good cause" exists for the examination. *See Turner*, 161 F.R.D. at 98 n. 5. The court does note, however, that the examination planned by the defendants was sweeping in scope. The doctors intend to obtain a full psychological profile of the plaintiff such that Dr. Scasta may opine on the plaintiff's mental condition at any time in his life. (*See* Scasta Affid. at ¶ 4). The sweeping scope of the request is a further indication of the impropriety of the examination. *See Schlagenhauf*, 379 U.S. at 120–121, 85 S.Ct. 234.

what extent, the alleged harassment caused [Bowen] to suffer emotional harm." *Id.*

### C. Sanctions

The parties have requested sanctions. However, given the fluidity of the law at this time on the issue of mental examinations under Rule 35, as detailed above, the court shall not impose sanctions upon either side.

For the foregoing reasons, the court shall deny the City defendants' motion to compel a psychiatric examination of Plaintiff Joseph Bowen.

The attached order shall be entered.

### ORDER

This matter having come before the court upon the motion of Laura D. Ruccolo, Esquire, counsel for Defendants The Parking Authority of the City of Camden, Carlos M. Morcate, Carmen Otero, Linda R. Jones, Thomas Buckingham, Charles Kellogg, Israel Hilerio, and Judy E. Fulton (collectively herein referred to as "the City defendants"), to compel the psychiatric examination of Plaintiff Joseph Bowen, pursuant to Fed. R.Civ.P. 35; and the court having considered the submissions of the parties; and the court having further considered the oral argument conducted on the record on February 21, 2003; and for the reasons noted in the opinion entered on this date; and for good cause shown;

IT IS on this 4th day of April 2003 hereby

**ORDERED** that the defendants' motion to compel and for sanctions pursuant to Fed. R.Civ.P. 37 shall be *denied;* and

IT IS FURTHER **ORDERED** that Plaintiff Joseph Bowen shall be barred from producing at trial any expert on the issue of Plaintiff Bowen's mental status pursuant to Fed.R.Civ.P. 16; and

IT IS FURTHER **ORDERED** that Plaintiff Joseph Bowen shall be barred from presenting any evidence of present mental status pursuant to Fed.R.Civ.P. 16.